1997 OK 62

**AIRCRAFT EQUIPMENT COMPANY, Appellee/Cross Appellant,**

v.

**The KIOWA TRIBE OF OKLAHOMA, Appellant/Cross Appellee,**

**Watson Management Group, Inc.; Koch Oil Company, a division of Koch Industries, Inc.; Aquila Energy Corporation, Kerr McGee Refining Corporation, Oryx Energy Corporation, Plains Liquids Transport, Inc., Sun Company, Inc. (R & M), Associated Natural Gas, Inc., Associated Transport and Trading Company, Senex Pipe Line Company, and Hamon Operating Company, Appellees.**

No. 86184.

Supreme Court of Oklahoma.

May 6, 1997.

As Corrected Aug. 21, 1997.

William J. Robinson, Oklahoma City, for Appellee and Cross Cross–Appellant, Aircraft Equipment Company.

Shelia D. Tims, R. Brown Wallace, Oklahoma City, for Appellant, The Kiowa Tribe of Oklahoma.

Janis Preslar, Oklahoma City, for Appellees, Aquila Energy Corporation, The Home-Stake Royalty Corp., Sun Co., Inc. (R & M), and Associated Natural Gas, Inc., Associated Transport & Trading Co.

Jonathan E. Miller, Oklahoma City, for Appellee, Oryx Energy Corp.

Myron K. Cunningham, Oklahoma City, for Appellee, Kerr–McGee Corp.

Dwight W. Birdwell, Ronald J. Pool, Oklahoma City, for Appellee, Plains Liquids Transport Inc. Oklahoma City, Oklahoma.

ALMA WILSON, Justice.

¶ 1 This appeal arises out of a post-judgment proceeding in the District Court of Oklahoma County, Oklahoma, initiated by Aircraft Equipment Company, appellee (Aircraft), to satisfy a money judgment entered by the Oklahoma County District Court against The Kiowa Tribe of Oklahoma, appellant (Tribe). The dispositive question is whether the state district court may enforce its money judgment against the Tribe. Pursuant to the universal rule that the power to render a judgment includes the power to enforce the judgment, we answer in the affirmative.

¶ 2 The underlying money judgment in favor of Aircraft and against the Tribe was entered in a contract action and affirmed in *Aircraft Equipment Company v. The Kiowa Tribe of Oklahoma*, 921 P.2d 359 (Okla.1996) (*Aircraft I*). Aircraft initiated a separate post-judgment proceeding seeking equitable relief in the nature of a creditor's bill during the pendency of the appeal in *Aircraft I*.[1] Aircraft contends that equitable relief will avoid the cost and time burdens of multiple garnishments. The Tribe does not challenge the propriety of the equitable remedy, rather it contends that enforcement of the money judgment is contrary to federal law.

¶ 3 Through the creditor's bill, Aircraft sought to satisfy its judgment from funds in the possession of the Tribe's contracted tax collector, Watson Management Group, Inc., and the taxpayers, appellee oil and gas entities.[2] In response, the defending oil and gas entities made requests to interplead the funds into the district court, for attorney fees and costs of the interpleader, and to restrain the Tribe from enforcing its tax liens against them. By its Journal Entry of Judgment filed October 13, 1995, the district court granted Aircraft's request to satisfy its money judgment out of the tax due from the oil and gas entities; directed that the funds be paid into the court; allowed costs and attorney fees as deductions from the funds in amounts to be determined at a later hearing; and restrained the Tribe from enforcing its tax liens against the appellee oil and gas entities.

¶ 4 The Tribe asks this Court to reverse and vacate the money judgment in *Aircraft I* and to direct district court dismissal of the petition for a creditor's bill. The Tribe contends that in the absence of its consent to suit or its waiver of sovereign immunity, Oklahoma lacks judicial power to enter or enforce a money judgment against the Tribe. The Tribe argues that *Aircraft I* is based upon two Oklahoma cases that are inconsistent with federal law, *Lewis v. The Sac and Fox Tribe of Oklahoma Housing Authority*, 896 P.2d 503 (Okla.1994), cert. denied —— U.S. ——, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995), and *Hoover v. Kiowa Tribe of Okla-*

---

1. The judgment in *Aircraft I* is in the amount of $180,000.00 plus interest at the rate of ten per cent per annum from April 3, 1990. Prior to seeking equitable relief, Aircraft sought to satisfy its judgment through garnishments. Whether the money judgment against the Tribe may be enforced through garnishment proceedings is pending before this Court in *Aircraft Equipment Company v. The Kiowa Tribe of Oklahoma, et al.*, No. 85,272.

2. Pursuant to the General Revenue and Taxation Ordinance, adopted by Resolution No. 86–66 of the Kiowa Business Committee of the Tribe, August 11, 1986, an occupation tax is imposed upon working interest owners of mineral rights underlying land owned by the Tribe or its members. The tax is calculated on the gross value of production less the royalty proceeds due the lessors. The tax is reported and paid on a monthly basis. Watson Management Group, Inc., collects the tax for the Tribe from the first purchaser or operator, retaining fifty percent of the collections for its services. The failure to pay the tax, under the General Revenue and Taxation Ordinance, creates a lien on all oil and gas proceeds attributable to the working interest owners. (R., vol. I, pp. 257–280)

*homa,* 909 P.2d 59 (Okla.1995), cert. denied —— U.S. ——, 116 S.Ct. 1675, 134 L.Ed.2d 779 (1996). The Tribe asserts that *Lewis* and *Hoover* failed to recognize that tribal sovereignty is presumed intact, *Iowa Mutual Insurance Company v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), and that absolute immunity to damage suits is a significant aspect of tribal sovereignty, *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991).

¶ 5 In *Iowa Mutual Insurance Company v. LaPlante,* supra, an insurer sought declaratory judgment that its liability contract, insuring an on-reservation commercial enterprise, did not impose a duty to defend in the tribal court against a claim to recover for personal injury occurring on the reservation. The *LaPlante* Court concluded that the tribal court should determine its jurisdiction and any tribal court remedy should be exhausted, as a matter of comity rather than jurisdiction, before the federal district court considers the declaratory judgment claim. *LaPlante* does not stand for the proposition that a presumption of sovereignty bars the exercise of state judicial power over a controversy arising out of an Indian tribe's commercial activity outside of Indian country as presented in *Aircraft I.*

█ ¶ 6 In *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe,* supra, the state assessed the Potawatomi Tribe for taxes which the Tribe had failed to pay on cigarettes sold to tribal members and non-members at the Tribe's convenience store on Indian country land. The Court concluded that the doctrine of tribal sovereign immunity protects the Potawatomi Tribe from suit by the state to collect its assessment for delinquent taxes. Following *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) and *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), the Court recognized that the state's taxing power may reach inside of Indian country and that the immunity doctrine does not shield an Indian tribe from all state-law obligations to assist in the collection of state taxes. Concluding that the immunity doctrine prevented the state from collecting its delinquent taxes directly from the tribe, the *Citizen Band Potawatomi* opinion observes that the doctrine does not prevent collection of taxes from individual tribal agents and officers, nor individual Indians dealing with non-Indians within Indian country, or non-Indians dealing with the Tribe outside Indian country.[3] In his concurring opinion in the *Citizen Band Potawatomi* case, Justice Stevens viewed the foundation of the doctrine of tribal sovereign immunity as an anachronistic fiction. Recognizing that an Indian tribe is immune from an action for damages absent its consent and citing *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940), Justice Stevens expressed doubt that the immunity extends to cases arising from a tribe's conduct of commercial activity outside its own territory.[4]

---

**3.** The dissent reads the *Citizen Band Potawatomi* opinion as recognizing that Oklahoma has a right to secure a judgment against the Tribe for the delinquent tax due on the Tribe's sales of cigarettes to non-tribal members, without a judicial remedy to enforce the judgment. That was not the case. The *Citizen Band Potawatomi* Court determined that the state had a right to impose tax burdens on non-Indians within Indian country, but it had no judicial remedy for the collection of delinquent taxes directly from the Tribe even though the taxes should have been collected from the non-Indian consumers when purchasing cigarettes at the Tribe's convenience store located on Indian country. The *Citizen Band Potawatomi* Court concluded that the doctrine of tribal sovereign immunity prevented the Oklahoma Tax Commission from collecting delinquent sales tax through the "most efficient reme-

dy"—collection from the single retailer (the Tribe) rather than from the countless consumer/purchasers. The *Citizen Band Potawatomi* discussion of "remedies" concerns the statutory tax collection method of assessing a retailer for delinquent taxes that the retailer failed to collect from the consumer/taxpayers; it does not relate to remedies available to a judgment creditor as herein involved. Nothing in the *Citizen Band Potawatomi* opinion intimates that the "State of Oklahoma, as a judgment creditor, does not have [a judicial remedy] against an Indian tribe," as suggested by the dissent.

**4.** In *United States v. United States Fidelity & Guaranty Co.,* supra., the U.S. Supreme Court determined that 34 Stat. 137, 144, authorized suit against the United States, on behalf of the dependent Choctaw and Chickasaw tribes, only

Neither the opinion, nor the concurring opinion, in the *Citizen Band Potawatomi* case teaches that a federally recognized Indian tribe is absolutely immune from suit for money judgment as we allowed and affirmed in *Aircraft I.* We expressly reject the Tribe's argument that the doctrine of tribal immunity has a greater reach than that of the state or federal governments.[5]

■ ¶ 7 The dissent would declare, as urged by the Tribe, that Oklahoma's judicial power can only be extended over her Indian tribes upon express tribal or congressional consent. In *State ex rel. May v. Seneca–Cayuga Tribe,* 711 P.2d 77, 85 (1985), we rejected the concept that Oklahoma's judicial authority does not reach Indian tribes within the state's borders, unless Congress or the Tribe has expressly provided otherwise. Our

*Seneca–Cayuga* holding was grounded in the early congressional enactments surrounding statehood.[6] Similar to the *Citizen Band Potawatomi* case, the *Seneca–Cayuga* case recognized that a state generally has authority over non-Indians within Indian country and Indians and their activities outside of Indian country. As to the activities of the tribe and its members within Indian country, our *Seneca–Cayuga* opinion concluded that, through the years, the doctrine of tribal sovereign immunity has been displaced by the principles of federal preemption and infringement on tribal self-government. Following the *Seneca–Cayuga* reasoning, *Lewis v. The Sac and Fox Tribe of Oklahoma Housing Authority,* supra, held that Oklahoma courts have constitutionally-invested cognizance, concurrent with federal courts, to entertain

in the federal court in Indian Territory and therefore, refused to enforce a Missouri money judgment against the Tribes. The congressional enactment published at 34 Stat. 137, approved April 26, 1906, provided, inter alia, for the dissolution of the Five Civilized Tribes in Indian Territory and fixed the rolls of citizens of each of the Five Civilized Tribes.

5. The Tribe asserts that the doctrine of tribal sovereignty is an absolute immunity protecting it from suit arising out of its torts or contracts arising outside Indian country. The dissent would extend tribal immunity as an absolute bar to suit or other legal process initiated by a judgment creditor to satisfy a valid judgment against a tribe. Both the Tribe and the dissent press for greater immunity·from suit than·is enjoyed by either the state or federal government.

6. *State ex rel. May v. Seneca–Cayuga Tribe,* 711 P.2d at 86–87. The State of Oklahoma has a unique history in regard to relations with Indian tribes within her boundaries. R. Strickland, *Felix S. Cohen's Handbook of Federal Indian Law,* (1982 Ed.), p. This history reveals that the State of Oklahoma, from the time of statehood, has been vested with judicial jurisdiction over all her citizens. The Organic Act of May 2, 1890, 26 Stat. 81, fixed the boundaries of Oklahoma Territory and Indian Territory and established territorial governments therefor. In the 1890's, lands of most of the tribes in Oklahoma Territory were allotted. *Id.,* at 774. In 1893, the Dawes Commission was established to facilitate the allotment of the lands of the Five Civilized Tribes in Indian Territory. *Id.* The Curtis Act of June 28, 1898, 30 Stat. 495, intended to expedite the allotment process, abolished the tribal governments in Indian Territory, including the tribal courts. The Five Civilized Tribes attempted to have Indian Territory admitted as the state of

Sequoyah. In the face of congressional opposition to the proposed state of Sequoyah, the Five Civilized Tribes supported the admission of Oklahoma Territory and Indian Territory as a single state of the United States. Casey, O., *And Justice for All,* (1989). The Enabling Act of June 16, 1906, 34 Stat. 267, permitted the two territories to seek statehood for the State of Oklahoma. Section 2 of the Enabling Act expressly provided that U.S. citizens and members of Indian tribes or nations may vote and participate in the formation of the constitutional state government for the State of Oklahoma. The Organic Act at § 43 and the Enabling Act at § 2 contemplate that Indians residing in Indian Territory and Oklahoma Territory would be assimilated as citizens of the United States and the State of Oklahoma. Section 12 of the Organic Act extended the jurisdiction of the district courts in Oklahoma Territory to all controversies involving members or citizens of an Indian tribe or nation except controversies arising between Indians of the same tribe while sustaining their tribal relations, and § 30 extended the jurisdiction of the courts in Indian Territory to all civil and criminal cases except cases arising in the territory in which members of an Indian nation were the only parties. And, §§ 19 and 20 of the Enabling Act declared that the courts of original jurisdiction for the State of Oklahoma would be the successor to all courts of original jurisdiction in Indian Territory and Oklahoma Territory. In *Oklahoma Tax Commission v. United States,* 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943), the United States Supreme Court observed that the Oklahoma Indians are actually citizens of the State with little to distinguish them from all other citizens except for their limited property restrictions and tax exemptions and that they retain remnants of tribal sovereignty with no effective tribal autonomy.

any federal-law claim not explicitly withdrawn from their authority by some congressional enactment, so long as state judicature does not infringe upon tribal self-government. *Lewis* involved a contractual dispute between an Indian home buyer and an Indian housing authority arising out of the housing authority's promise to convey its interests in real property. And applying *Lewis, Hoover v. Kiowa Tribe of Oklahoma,* supra, held that a contract between an Indian tribe and a non-Indian executed outside of Indian country is enforceable in state court. *Hoover* involved a contractual dispute between the Kiowa Tribe and a private individual arising out of the Tribe's promise to pay for 5,000 shares of common stock in the Clinton–Sherman Aviation, Inc. We find no merit to the Tribe's argument that *Lewis, Hoover,* and *Aircraft I* are contrary to federal law.

■■■ ¶ 8 We adhere to the long-standing, well-established rule that if a court has the power to render a judgment, it has the power to enforce its judgment and give it effect through the proper processes. *Riggs v. Johnson County,* 73 U.S.(6 Wall.) 166, 18 L.Ed. 768 (1868). We determined in *Aircraft I* that the district court sitting in Oklahoma County had the power to render a money judgment against the Tribe for its failure to perform a contract executed outside of Indian country and we affirmed the summary judgment entered in favor of Aircraft and against the Tribe. Aircraft, as a judgment creditor, sought to enforce its judgment against the Tribe, as the judgment debtor, through an authorized equitable remedy.[7] Accordingly, we conclude that the District Court in Oklahoma County had the power to enforce its money judgment affirmed in *Aircraft I* through the equitable remedy in the nature of a creditor's bill.

■ ¶ 9 The Tribe asserted before the district court and asserts in this appeal that exercise of state judicial power to seize tribal tax revenues impermissibly infringes upon the Tribe's federally protected sovereign rights. Citing *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982), the Tribe contends that the power to tax is an essential attribute of Indian sovereign rights. Without citation of authority, the Tribe argues that the power to tax is meaningless if the state has the power to seize the fruits of the taxing power or restrain tax enforcement. Our independent research reveals no authority holding that satisfaction of a valid, enforceable money judgment against a taxing entity out of its tax revenues renders the power to tax meaningless or otherwise diminishes or surrenders the power to tax.

■ ¶ 10 The Tribe also argues that enforcement of the money judgment infringes upon tribal self-government contrary to *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority,* supra. Enforcement of a money judgment against an Indian tribe in a court of competent jurisdiction is obviously a burden upon the Tribe. However, *Lewis* does not suggest that the district court must make inquiry as to whether a state-court, post-judgment enforcement proceeding burdens the Tribe. *Lewis* requires a preliminary inquiry to test the outer limits of state-court cognizance to render judgment on the Indian interests in the initial controversy, the contract controversy in *Aircraft I.* We view the burden of enforcement of the money judgment in favor of Aircraft and against the Tribe as legally permissible where the Tribe ventured outside its Indian country, engaged in commercial activity for economic gain, and created a contract controversy which was ultimately settled in a court of competent jurisdiction by the money judgment sought to be enforced.[8] Any other view would render the state court judgment meaningless and deny Aircraft a peaceful means of satisfying its money judgment.

¶ 11 That the Tribe had the opportunity to challenge Aircraft's right to pursue a creditor's bill is not an issue. In response to Aircraft's summary judgment motion, the Tribe elected to reiterate its challenge to the

---

7. 12 O.S.1991, § 841.

8. Indians going outside Indian county are subjected to the nondiscriminatory state law applicable to all the state's citizens, unless otherwise expressly provided by federal law. *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973).

power of the court to render the money judgment in the first instance and to enforce the judgment. The Tribe did not, however, challenge the availability or propriety of the equitable remedy. Below and on appeal, the parties represent that there is no dispute as to any fact material to this post-judgment controversy. Under these circumstances, summary judgment granting the petition for a creditor's bill was proper.

¶ 12 Aircraft, in its cross-appeal, challenges the interpleader. Aircraft contends the district court abused its power in ordering payment of the Tribe's funds in the possession of the oil and gas entities into the court. An order for holding funds in the court is within the discretion of that court[9] and will not be disturbed by the appellate court except upon a showing of clear abuse. It is undisputed that both Aircraft and the Tribe claim entitlement to the funds ordered to be paid into the court. Title 12 O.S.1991, § 2022 provides that a defendant who is exposed to double or multiple liability may obtain interpleader by way of cross-claim or counterclaim. This is precisely the situation confronting the oil and gas entities in the court below. We find no abuse of discretion in the district court's order for payment of the funds into the court.

### JUDGMENT OF THE DISTRICT COURT AFFIRMED.

HODGES, LAVENDER, HARGRAVE and OPALA, JJ, concur.

SIMMS and WATT, JJ., concur in result.

KAUGER, C.J., and SUMMERS, V.C.J., dissent.

SIMMS, Justice, concurring in result:

Time has passed for this challenge to the State's assertion of jurisdiction over the Tribe as barred by sovereign immunity. This Court's decision in Aircraft I holding the Tribe subject to suit for money damages arising from breach of the Tribe's contractual obligations is final and is the law of the case. The instant proceeding is brought only to enforce that judgment which is valid in all respects and is properly allowed by the Court.

The dissent's reliance on *Oklahoma Tax Comm'n. v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), is misplaced as that decision does not involve questions regarding the effects of sovereign immunity on efforts of the State to enforce an existing judgment in its favor against an Indian tribe. Rather, *Citizen Band* concerns issues of the tribe's immunity from suit by the state. It was this immunity *from a lawsuit* which the court was discussing as barring the State from its "most efficient remedy" in the particular quote set forth by the dissent. Neither that quotation nor the greater scope of the Court's decision reached the question presented in the instant matter: whether the judgment entered against the Tribe in Aircraft I, which is final and valid, may now be enforced by means of ordinary judicial process by the district court which rendered it.

SUMMERS, Vice Chief Justice, dissenting, with whom KAUGER, Chief Justice, joins.

¶ 1 My views on the judgment itself are expressed in the opinion dissenting from *Aircraft Equipment Co. v. Kiowa Tribe,* 921 P.2d 359, 362 (Okla.1996). I also dissent from today's decision to permit collection of the judgment from the Tribe in derogation of Kiowa tribal sovereign immunity.

¶ 2 The majority concludes that if the state has the power to render a judgment against a tribe, it thus has the power to enforce the judgment. This sounds reasonable, but it is in direct conflict with the United States Supreme Court case of *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). In *Citizen Band,* with Chief Justice Rehnquist writing, the Court opened by saying:

Indian tribes are "domestic dependent nations" that exercise inherent sovereign authority over their members and territories. *Cherokee Nation v. Georgia,* [30 U.S.](5

9. *City of Barnsdall v. Curnutt,* 201 Okla. 508, 510, 207 P.2d 320, 322 (1949).

Pet.) 1, 17, 8 L.Ed. 25 (1831). Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation.[1] *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). 498 U.S. at 507 [111 S.Ct. at 908]

It went on to say:

> A doctrine of Indian tribal sovereign immunity was originally enunciated by this Court and has been reaffirmed in a number of cases. (Citations omitted) 498 U.S. at 510 [111 S.Ct. at 910]

Then after discussing Congress's consistent reluctance to undercut tribal sovereign immunity it said:

> Under these circumstances, we are not disposed to modify the long-established principle of tribal sovereign immunity. 498 U.S. at 510 [111 S.Ct. at 910]

The Supreme Court went on to hold that Oklahoma had the power to tax the Tribe's sale of cigarettes to non-tribal members. However, the Court recognized that while a judgment in favor of the Oklahoma Tax Commission for the tax on such sales was valid, the Tax Commission lacked the power to enforce it directly against the Tribe. As to enforcement of such a judgment the Court stated:

> *There is no doubt that sovereign immunity bars the State from pursuing the most efficient remedy,* but we are not persuaded that it lacks any adequate remedy. We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). And under today's decision, States may of course collect the sales tax from cigarette wholesalers, either by seizing unstamped cigarettes off the reservation, *Colville, supra,* 447 U.S. at 161, 162, 100 S.Ct. at 2085, 2085–2086, or by assessing wholesalers who supplied unstamped cigarettes to the tribal stores, *City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n,* 898 F.2d 122 (10th Cir.1990). States may also enter into agreements with the tribes to adopt a mu-

tually satisfactory regime for the collection of this sort of tax. See 48 Stat. 987, as amended, 25 U.S.C. § 476. And if Oklahoma and other States similarly situated find that none of these alternative produce the revenues which they are entitled, they may of course seek appropriate legislation from Congress. (emphasis added)

*Id.* at 514, 111 S.Ct. at 912. This paragraph clearly shows that in lawsuits against Indian tribes a right does not necessarily carry with it a complete remedy, according to the U.S. Supreme Court. The majority's position to the contrary today is inconsistent with *Citizen Band.*

¶ 3 The Court attempts to distinguish *Citizen Band* by pointing out that suits against individuals or officers of the tribe are permitted, and that the state as judgment creditor could also pursue the wholesalers who provided the unstamped cigarettes. That is true. What today's Court fails to note is that the present action is not one against individual officers of the tribe nor some third party. *This case is against the Kiowa Tribe of Oklahoma.* It is strange, to say the least, that this Court gives Aircraft Equipment Co., as a judgment creditor, a remedy against an Indian tribe which the United States Supreme Court says the State of Oklahoma, as a judgment creditor, would not have and could not use against an Indian tribe. *"There is no doubt that sovereign immunity bars the State from pursuing the most efficient remedy. ..." Id.*

¶ 4 Enforcement of a judgment by means of judicial process against the Tribe is unlawful. I respectfully dissent.

---

1. This rule is not recognized by the Supreme Court of Oklahoma. See *Hoover v. Kiowa Tribe,* 909 P.2d 59 (Okla.1995); *Aircraft Equipment Co., supra.*