**F I L E D**
United States Court of Appeals
Tenth Circuit

JUL 13 1998

**PATRICK FISHER**
Clerk

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

KIOWA INDIAN TRIBE OF OKLAHOMA, a federally
recognized Indian Tribe,

    Plaintiff-Appellant,

v.

ROBERT M. HOOVER, Jr., an individual; AIRCRAFT
EQUIPMENT COMPANY, a joint venture formed under
the laws of Oklahoma; JOHN M. AMICK, in his
capacity as a District Judge, State of Oklahoma; JAMES
B. BLEVINS, in his capacity as a District Judge, State
of Oklahoma; CAROLYN R. RICKS, in her capacity as
a District Judge, State of Oklahoma,

    Defendants-Appellees,

Nos. 96-6278 &
96-6401

---

**Appeal from the United States District Court
for the District of Western District of Oklahoma
(D.C. No. CIV-96-843-C)**

---

R. Brown Wallace (Shelia D. Tims with him on the briefs) of Andrews Davis
Legg Bixler Milsten & Price, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Neal Leader, Senior Assistant Attorney General, Oklahoma City, Oklahoma, for
Defendants-Appellees John M. Amick, James B. Blevins and Carolyn R. Ricks.

William J. Robinson of Shirk, Work & Robinson, P.C., Oklahoma City,
Oklahoma, for Defendants-Appellees Robert M. Hoover, Jr., and Aircraft
Equipment Company.

Before **BRORBY** and **McWILLIAMS**, Circuit Judges, and **BLACK**,[*] District Judge.

―――――――――――――

**BRORBY**, Circuit Judge.

―――――――――――――

This is a consolidated appeal of the dismissal of a 42 U.S.C. § 1983 suit brought by the Kiowa Tribe of Oklahoma (Kiowa or the Tribe) and the earlier denial of the Tribe's request for a preliminary injunction related to that action. The § 1983 action alleged multiple violations of the Tribe's rights, privileges and immunities, including the right and privilege to have its commerce regulated pursuant to federal law, the right and privilege to immunity from damage suits, and the right and privilege to exercise its powers of sovereignty and self-government. Concluding consideration of the § 1983 action was barred by the *Rooker-Feldman* doctrine, which generally prohibits lower federal courts from hearing federal claims requiring direct review of final state court judgments, the district court dismissed the Tribe's suit, in effect a dismissal for lack of subject matter jurisdiction. We review dismissals for lack of subject matter jurisdiction *de novo*. *Quintana v. United States*, 997 F.2d 711, 712 (10th Cir. 1993). Accordingly, this court independently reviews the district court's conclusions on

―――――――――――――

[*] The Honorable Bruce D. Black, United States District Judge for the District of New Mexico, sitting by designation.

-2-

legal issues and need not defer to the district court's decisions on the law. *Key v. Liquid Energy Corp.*, 906 F.2d 500, 505 (10th Cir. 1990).

In conjunction with its § 1983 action, the Tribe sought a preliminary injunction barring further prosecution of state contract claims against the Tribe and use of certain post-judgment remedies directed against the Tribe, including seizure of a variety of tribal assets, on the basis that these procedures violated the Tribe's sovereign immunity and, hence, exceeded state jurisdiction. After a hearing, the district court denied the Tribe's motion. This court reviews a district court order denying a preliminary injunction for abuse of discretion. *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1489 (10th Cir. 1997). An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings. *Id*. We must carefully scrutinize the district court's exercise of its discretion, but "we may not ... substitute our own judgment for that of the trial court." *Tri-State Generation & Transmission Ass'n, Inc. v. Shosone River Power, Inc.*, 805 F.2d 351, 354-55 (10th Cir. 1986). The merits of the underlying action may be considered on appeal "only insofar as they bear on the issue of judicial discretion." *Otero Savings & Loan Ass'n v. Federal Reserve Bank*, 665 F.2d 275, 276-77 (10th Cir. 1981).

These consolidated appeals raise an unsettled question of subject matter jurisdiction. We exercise jurisdiction under 28 U.S.C. §1291 and 28 U.S.C. § 1292 and reverse the district court's dismissal of the Tribe's § 1983 suit, reverse the district court's denial of a preliminary injunction, and remand for further proceedings.

I

*State Proceedings*

The Kiowa Tribe of Oklahoma is a federally recognized Indian tribe. [1] 61 Fed. Reg. 58,211, 58,213 (1996). This consolidated appeal stems from a series of related suits [2] against the Kiowa Tribe and certain named tribal representatives arising from promissory notes the Tribe gave to purchase all stock in Clinton-

---

[1] Federal recognition means Kiowa "is entitled to the immunities and privileges available to ... federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States." 25 C.F.R. § 83.2. As part of this relationship, Congress has a trust responsibility to protect a tribe's sovereignty. 25 U.S.C. § 3601(2).

[2] Related suits include *Hoover v. Kiowa Tribe*, 909 P.2d 59 (Okla. 1995), *cert. denied*, 517 U.S. 1188 (1996); *Aircraft Equip. Co. v. Kiowa Tribe*, 921 P.2d 359 (Okla. 1996); *Kiowa Tribe v. Manufacturing Tech.,* ___ U.S. ___, 118 S. Ct. 1700 (1998). There are additional related legal actions not described here.

-4-

Sherman Aviation, Inc. [3] Neither Congress nor the Tribe consented to these suits or otherwise waived the Tribe's sovereign immunity. To the contrary, the Tribe specifically reserved its sovereign rights in the notes upon which it was sued. *See, e.g., Hoover*, 909 P.2d at 61 (noting state district court's finding of express reservation of sovereign immunity in promissory note and security agreement). [4]

Creditor Robert M. Hoover, Jr., a non-Indian, sued the Tribe and six named individuals in state court alleging the Tribe breached a contract by failing to make any of the agreed payments on a promissory note for $142,500. [5] *Hoover*, 909

---

[3] At the time the notes were issued, Clinton-Sherman Aviation, Inc. was an Oklahoma corporation engaged in aircraft repair and maintenance at the former Clinton-Sherman Air Force Base, located near Burns Flat, outside Indian Country. *See Hoover*, 909 P.2d at 60 n.2; *see also* 18 U.S.C. § 1151 (defining Indian Country).

[4] The Tribe expressly reserved its tribal sovereign immunity by inserting provisions similar to the following into the various notes and security agreements: "Nothing in this Guaranty subjects or limits the sovereign rights of the Kiowa Tribe of Oklahoma." *Aircraft Equip. Co.*, 921 P.2d at 363 (Summers, J., dissenting).

[5] On April 3, 1990, the Tribe, represented by six individuals named in Mr. Hoover's complaint, made, executed, and delivered the promissory note to Mr. Hoover. The Tribe simultaneously executed a security agreement pledging as security 5,000 shares of common stock of Clinton-Sherman Aviation, Inc. After the Tribe's alleged breach, Mr. Hoover gave proper notice to the Tribe and sold the stock at public auction, buying it himself for $1.00. He then filed suit against the Tribe to recover the balance on the note. *See Hoover*, 909 P.2d at 60-61, 60 n.3.

P.2d at 60. Asserting sovereign immunity, the Tribe moved to dismiss for lack of jurisdiction. *Id*. at 60-61. The trial court agreed and dismissed Mr. Hoover's complaint. *Id*. at 61. Mr. Hoover appealed. *Id*. A divided Oklahoma Supreme Court held "a contract between an Indian tribe and a non-Indian is enforceable in state court when the contract is executed outside of Indian Country." *Id*. at 62 (5-3 decision). On remand, Oklahoma District Court Judge James B. Blevins entered a money judgment against the Tribe.

Meanwhile, Aircraft Equipment Company (Aircraft Equipment) sued Kiowa for breach of an assumption agreement in which the Tribe agreed to assume the indebtedness of Aircraft Equipment on a note, and failed to make the required payments on the outstanding debt of $180,000. [6] *Aircraft Equip. Co. v. Kiowa Tribe*, 921 P.2d 359, 360 (Okla. 1996) (*Aircraft Equip. I*). The Tribe filed a motion to dismiss, again asserting tribal sovereign immunity, which was denied by the state district court. *Id*. Aircraft Equipment's motion for summary

---

[6] Aircraft Equipment was the maker of a note payable to Carl E. Gungoll Exploration Joint Venture (Gungoll Exploration) in the amount of $200,000, with $180,000 still owing. The Tribe agreed to assume Aircraft Equipment's obligation on the note in order to purchase all Aircraft Equipment's assets. When the Tribe failed to make the agreed upon payments to Gungoll Exploration, Aircraft Equipment made the payments, and then sued the Tribe to recover. *Aircraft Equip. Co.*, 921 P.2d at 360.

judgment was granted, and Oklahoma District Court Judge Carolyn R. Ricks entered a money judgment against the Tribe. *Id.* On appeal, the Oklahoma Court of Appeals affirmed the district court. *Id*. Subsequently, a majority of the Oklahoma Supreme Court, in reliance on its decision in *Hoover*, again held the Tribe was subject to a money damage suit for claims arising from commercial activity outside Indian Country, openly departing from this Court's opinion to the contrary in *Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1065 (10th Cir.) (holding extra-territorial nature of commercial activity does not strip tribe of its right to assert sovereign immunity), *cert. denied*, 516 U.S. 810 (1995). *Id*. at 360-61. *See also First Nat'l Bank v. Kiowa, Comanche & Apache Intertribal Land Use Comm.*, 913 P.2d 299, 301-02 (Okla. 1996) (Kauger, J., dissenting) (arguing *Hoover* "directly contradicts" the Tenth Circuit ruling in *Sac & Fox Nation* and, therefore, should be overruled). The judgment of the trial court was affirmed. *Aircraft Equip.*, 921 P.2d at 360.

While the decision of the state district court in *Aircraft Equip. I* was on appeal, Aircraft Equipment initiated post-judgment proceedings in the state district court to satisfy the money judgment entered against the Tribe. [7] *See*

_____

[7] The record also indicates Mr. Hoover garnished the First National Bank of Mountain View, seeking to seize three bank accounts holding tribal funds used for operation of tribal programs; garnished the Bureau of Indian Affairs, seeking

*Aircraft Equip. Co. v. Kiowa Tribe*, 939 P.2d 1143 (Okla. 1997) (*Aircraft Equip. II*), *vacated*, 118 S. Ct. 2058 (1998 WL 275752) (Jun. 1, 1998). Aircraft Equipment first sought to satisfy its judgment against the Tribe by garnishing oil and gas tax revenues held for the Tribe by Watson Management Group, Inc. (Watson Management), the Tribe's contracted tax collector, and similar funds deposited in the Anadarko Bank & Trust Company. *Id*. at 1145 n.1. Rejecting the Tribe's claim that neither a sovereign nor its tax revenues may be garnished, Oklahoma District Court Judge Ricks entered judgment in favor of Aircraft Equipment. That judgment is currently on appeal.

Aircraft Equipment also sought equitable relief in the nature of a creditor's bill. *Aircraft Equip. II*, 939 P.2d at 1145. Through the creditor's bill, Aircraft

_____

to seize tribal funds maintained by the Bureau; initiated execution on real estate held in trust by the United States for the use and benefit of the Tribe; and initiated execution on several motor vehicles owned by the Tribe and used in administration of tribal governmental programs.81-86.)

Tribal tax revenues also were seized, and federal funds appropriated to the Tribe were frozen by various creditors in other post-judgment actions related to the Clinton-Sherman Aviation deal. *See, e.g., Carl E. Gungoll Exploration Joint Venture v. Kiowa Tribe*, (W.D. Okla.) No. CIV-96-2059-T (before removal, CJ-90-10166, Dist. Ct. of Okla. County) (Anadarko Bank & Trust Co., garnishee); *Hoover v. Kiowa Tribe,* (W.D. Okla.) No. CIV-96-1624L (before removal, No. CJ-91-667, Dist. Ct. of Okla. County) (First Nat'l Bank of Mountain View, garnishee). Federal program funds have now been recovered by the Tribe. (Oral Argument, Nov. 17, 1997.)

Equipment sought to satisfy its money judgment from oil and gas severance taxes accruing to the Tribe but possessed by Watson Management and various taxpayers, oil and gas entities. *Id*. The Tribe again attempted to defend against the action by asserting its sovereign immunity. *Id*. at 1145-46. In the interim, the oil and gas entities asked to interplead the tax funds into the district court and "to restrain the Tribe from enforcing tax liens against them." *Id*. at 1145. Oklahoma District Court Judge John M. Amick granted Aircraft Equipment's request to satisfy its money judgment from severance taxes accruing to the Tribe, ordered that such funds be paid to the court, and enjoined the Tribe from enforcing liens against the oil and gas entities. [8] *Id*. at 1145. A divided Oklahoma State Supreme Court affirmed the judgment of the state district court, holding that if a state court has the power to render a judgment, then it has the power to enforce a money judgment against the Kiowa Tribe. *Id*. at 1143, 1148-49 (five justices concurring, two concurring in result only, two dissenting).

---

[8] Under the General Revenue and Taxation ordinance adopted by the Tribe, failure to pay the severance tax on a monthly basis creates a lien on all oil and gas proceeds attributable to the working interest owners of mineral rights. *See Aircraft Equip. II*, 939 P.2d at 1145 n.2. Absent the state district court's order barring enforcement, Kiowa would have been able to foreclose liens against the oil and gas producers since the taxes were paid to the court rather than the Tribe. Thus, the court's order effectively prohibited the Tribe from enforcing its own law.

*Federal Proceedings*

While the appeal in *Aircraft Equip. II* was pending before the Oklahoma Supreme Court, the Tribe concluded pursuit of further relief in state court was "vain, useless and inadequate" in light of the *Hoover* and *Aircraft Equip. I* decisions and commenced a § 1983 action in the United States District Court for the Western District of Oklahoma against Mr. Hoover, Aircraft Equipment, and Oklahoma District Court Judges Amick, Blevins, and Ricks (collectively, the Judges) in their official capacities. The Tribe claimed Mr. Hoover and Aircraft Equipment, by bringing breach of contract actions against the Kiowa Tribe in Oklahoma state court, and the Judges, by exercising jurisdiction in those actions, deprived the Tribe of rights, privileges and immunities secured to the Tribe by the Constitution and laws of the United States, most particularly the Tribe's right to sovereign immunity. As part of its request for relief in the § 1983 action, and in a separate motion, the Tribe asked the federal district court to enjoin Mr. Hoover, Aircraft Equipment, and the Judges from further prosecution of and exercise of jurisdiction over the suits in state court, use of state court processes to seize Kiowa's tax revenues and other funds and property belonging or owing to the Tribe, and interference with enforcement of the Tribe's laws. [9]

_____

[9] The Tribe also sought actual and punitive damages against Mr. Hoover and Aircraft Equipment, plus attorneys' fees.

After a hearing before the federal district court, the Kiowa Tribe's motion for a preliminary injunction was denied. Kiowa appealed the denial of the preliminary injunction. [10] While that appeal was pending, the district court dismissed the Tribe's suit, holding the *Rooker-Feldman* doctrine barred the court from hearing Kiowa's claims. The Kiowa Tribe appealed. These appeals have been consolidated pursuant to a motion by the Tribe.

During the pendency of this appeal, the Supreme Court rendered a decision in *Kiowa Tribe v. Manufacturing Tech. Inc.*, ___ U.S. ___, 118 S. Ct. 1700 (1998). In *Manufacturing Tech.*, another case arising from promissory notes in the Clinton-Sherman Aviation deal, the Court held tribal sovereign immunity barred suits in contract against the Tribe, even when the contracts in question involved off-reservation commercial activities. *Id*. at 1705. Thus, the decisions of the Oklahoma courts in *Hoover* and *Aircraft Equip. I* have been called into grave doubt. The Court subsequently vacated the decision in *Aircraft Equip. II*, a decision purporting to enforce the money judgment entered in *Aircraft Equip. I*.

---

[10] The Tribe filed a motion for injunction pending appeal pursuant to Rule 8 of the Federal Rules of Appellate Procedure. (Aplt. Br. I at 4; Non-Public Docket for No. 96-6278, 8/20/96 at entry 2.) That motion was denied by a separate panel of this court. (Non-Public Docket for No. 96-6278, 10/10/96 at entry 26.)

*See Kiowa Tribe v. Aircraft Equip.* , ___ U.S. ___, 118 S. Ct. 2058 (1998).

II

The ultimate questions for our decision are whether the Tribe's § 1983 suit may proceed, and whether an injunction should issue, restraining the various defendants from using state court processes to prosecute contract claims, seize tribal property, and block enforcement of tribal laws while that suit is pending. While the appellate jurisdiction of this court is unchallenged, there is a question about the federal district court's power to hear the Tribe's § 1983 action, the answer to which touches on essential aspects of the proper relation between state and federal courts *vis-à-vis* the sovereign immunity of Indian tribes.

The federal district court dismissed the Kiowa Tribe's § 1983 suit for want of jurisdiction, pursuant to the *Rooker-Feldman* doctrine. The federal district court denied the Tribe's request for a preliminary injunction, concluding the Tribe had failed to make an adequate showing of irreparable injury. In opposing the Tribe's motion for a preliminary injunction, Mr. Hoover, Aircraft Equipment, and the Judges also raise the *Younger* abstention doctrine, the Anti-Injunction Act, Eleventh Amendment immunity, the Tribe's capacity to prosecute a § 1983 action, and whether § 1983 can be used to press a claim arising from an alleged violation

of tribal sovereign immunity.  We shall take up each of these issues in turn, as necessary.

*Rooker-Feldman Doctrine*

The threshold question is whether consideration of the Tribe's § 1983 action is barred by the *Rooker-Feldman* doctrine.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).  The *Rooker-Feldman* doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).  As a rule, federal review of state court judgments can be obtained only in the United States Supreme Court. *Feldman*, 460 U.S. at 476 (citing 28 U.S.C. § 1257; *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970)); *see also Rooker*, 263 U.S. at 415-16.  Generally, a federal district court cannot review matters actually decided by a state court, *Rooker*, 263 U.S. at 415, nor can it issue "any declaratory relief that is 'inextricably intertwined' with the state court judgment," *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991) (quoting *Feldman*, 460 U.S. at 483-84 n.16 (extending doctrine to issues not actually decided by the state court)).

*But see Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir.) (indicating "specific law" may allow federal district court to entertain collateral attack on state court judgment), *cert. denied*, 513 U.S. 906 (1994). Thus, we must determine the preclusive effect, if any, of the state courts' determination of the Tribe's sovereign immunity claims in *Hoover* and *Aircraft Equip.*.

While the Tribe's appeal in *Aircraft Equip. II* was pending before the Oklahoma Supreme Court, the federal district court concluded the Tribe's § 1983 complaint was "inextricably intertwined" with the Oklahoma state court decisions in *Hoover* and *Aircraft Equip. I*.[11] We disagree.

Both Supreme Court jurisprudence and the factual context of the case at bar compel a narrow reading of the "inextricably intertwined" test. In *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 4-6 (1987), Texaco, having lost in Texas state court, had petitioned the federal district court for an injunction barring any action by

---

[11] At least one court has suggested the *Rooker-Feldman* doctrine "is broader than claim and issue preclusion because it does not depend on a final judgment on the merits." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.1 (8th Cir. 1995). However, in this case, the federal district court relied solely on the final judgments entered in *Hoover* and *Aircraft Equip. I*, hence, we need not decide whether the *Rooker-Feldman* doctrine could rest on the intermediate state court decisions in *Aircraft Equip. II*.

Pennzoil to enforce its $10.53 billion judgment during the pendency of Texaco's appeal on the merits in state court. Texaco raised both claims previously argued in state court and two fresh constitutional claims under § 1983. *Id*. at 6 n.6, 8. Noting it was not "attempting to sit as a final or intermediate appellate state court as to the merits of the Texas action," the federal district court rejected Pennzoil's *Rooker-Feldman* argument *inter alia*, asserted jurisdiction, and issued a preliminary injunction. *Id*. at 7 (quoting *Texaco, Inc. v. Pennzoil Co.*, 626 F. Supp. 250, 254 (S.D.N.Y. 1986)). The Second Circuit reversed as to the previously litigated claims, but affirmed as to the fresh § 1983 claims challenging the Texas bond and lien provisions, concluding the fresh constitutional claims were not inextricably intertwined with the underlying state court action. *Texaco Inc. v. Pennzoil Co*., 784 F.2d 1133, 1143-45 (2d Cir. 1986), *rev'd*, 481 U.S. 1 (1987). The Supreme Court reversed under the *Younger* abstention doctrine, 481 U.S. at 10 (relying on *Younger v. Harris*, 401 U.S. 37 (1971)), but the Court's treatment of the *Rooker-Feldman* doctrine provides important guidance on its application.

The Court's very invocation of *Younger* implies the district court properly exercised jurisdiction over Texaco's § 1983 claims. As Justice Marshall observed, "[t]here is no occasion to decide if abstention would have been proper unless the

District Court had jurisdiction." *Pennzoil* , 481 U.S. at 23 (Marshall, J., concurring in the judgment) (arguing district court's assumption of jurisdiction was "unwarranted"). Justice Scalia, joined by Justice O'Connor, wrote separately only to express his view that *Rooker-Feldman* did not deprive the district court of jurisdiction to decide Texaco's constitutional challenge to the Texas bond and lien provisions. *Id*. at 18 (Scalia, J., concurring). Justice Brennan, who authored *Feldman* , specifically rejected Pennzoil's *Rooker-Feldman* argument, finding Texaco's federal action was "'separable from and collateral to' the merits of the state-court judgment." *Id.* at 21 (Brennan, J., concurring in the judgment) (quoting *National Socialist Party v. Skokie* , 432 U.S. 43, 44 (1977) (citation and quotation marks omitted)). In the end, five justices explicitly rejected application of the *Rooker-Feldman* doctrine to Texaco's § 1983 challenge to Texas' bond and lien provisions, and three more did so *sub silentio* . *See Pennzoil* , 481 U.S. at 18 (Scalia, J., joined by O'Connor, J. concurring); *id*. at 21 (Brennan, J., concurring in the judgment); *id*. at 31 n.3 (Stevens, J., concurring in the judgment); *id*. at 28 (Blackmun, J., concurring in the judgment).

The Supreme Court's reasoning in *Pennzoil* indicates that if the purpose of a federal action is "separable from and collateral to" a state court judgment, then the claim is not "inextricably intertwined" merely because the action necessitates

*some* consideration of the merits of the state court judgment.  Moreover, on its facts, *Pennzoil* demonstrates that asking a federal court to enjoin post-judgment collection procedures that allegedly violate a party's federal rights is distinguishable from asking a federal court to review the merits of the underlying judgment.

We find further support for our reading of *Pennzoil* in *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505 (1991).  In *Citizen Band*, Oklahoma sought to recover $2.7 million from the Citizen Band Potawatomi Tribe of Oklahoma (Potawatomis) for taxes on cigarettes sold to nonmembers by a store owned and operated by the Potawatomi Tribe.  498 U.S. at 507.  The Potawatomis filed suit in federal court to enjoin the assessment.  *Id*. After discussing both the Court's frequent affirmation of the tribal sovereign immunity doctrine and Congress' consistent reiteration of its approval of the doctrine, the Court nonetheless held the doctrine "does not excuse a tribe from all obligations to assist in the collection of validly imposed state sales taxes."  *Id*. at 509-12.  Importantly, however, the Court recognized that while a judgment in favor of the Oklahoma Tax Commission for the tax on cigarette sales to nonmembers was valid, the Tax Commission lacked the power to enforce it directly against the Tribe since adequate alternative remedies existed.  *Id*. at 514.

Thus, in lawsuits against Indian tribes, a right to collect a judgment does not ensure a plaintiff the most efficient remedy. *Id.*; *see also Aircraft Equip. II*, 939 P.2d at 1149 (Summers, J., dissenting) (arguing post-judgment enforcement action against the Tribe is in direct conflict with *Citizen Band*).

While the *Rooker-Feldman* doctrine was not at issue in *Citizen Band*, the case does illustrate that the question of whether certain post-judgment enforcement procedures are available may be separable from and collateral to the question of whether a judgment may be entered in the first instance against an Indian tribe, even though the answers to both questions turn on the reach of tribal sovereign immunity. Both *Pennzoil* and *Citizen Band* instruct us to examine carefully Kiowa's complaint to determine if the district court's dismissal of the Tribe's federal action in its entirety was indeed compelled by *Hoover* and *Aircraft Equip. I*.

Although the Tribe's § 1983 action necessarily implicated the state court judgments in *Hoover* and *Aircraft Equip. I*, on its face the Tribe's complaint clearly states a separate and distinct claim challenging the post-judgment enforcement procedures ordered by the state courts, *i.e.*, the ongoing seizure of Kiowa's tax revenues by garnishment and creditor's bill, and the enjoining of

Kiowa from enforcing its tribal laws. Assuming *arguendo* that other remedies are available, *Citizen Band* tells us the underlying judgment against an Indian tribe and the question of available remedies are not "inextricably intertwined." If the state as judgment creditor was not entitled to the most efficient or effective remedy in *Citizen Band*, surely private actors are not guaranteed such an entitlement against an Indian tribe.

Federal district court review of the availability of particular post-judgment enforcement procedures could have proceeded without disturbing the underlying judgments in *Hoover* and *Aircraft Equip. I*. Thus, the Tribe's § 1983 action challenging the use of state court processes to seize tribal assets in satisfaction of state court judgments and to preclude enforcement of tribal laws was not barred by the *Rooker-Feldman* doctrine at the time the district court dismissed the Tribe's suit. While the Oklahoma Supreme Court's subsequent decision in *Aircraft Equip. II* may have presented a more difficult question under the *Rooker-Feldman* doctrine, that decision has now been vacated and presents no bar to the Tribe's action. *See Kiowa Tribe v. Aircraft Equip.*, ___ U.S. ___, 118 S. Ct. 2058 (1998).

Accordingly, the decision of the district court dismissing the Tribe's § 1983 action pursuant to the *Rooker-Feldman* doctrine is reversed and the case is

remanded for further proceedings consistent with this opinion.

*Preliminary Injunction*

While its § 1983 action was pending in the federal district court, the Kiowa Tribe requested a preliminary injunction to restrain Mr. Hoover and Aircraft Equipment from using state court processes to enforce the judgments entered in *Hoover* and *Aircraft Equip. I* . In specific, the Tribe sought to block the seizure of tribal property by Mr. Hoover and the impounding of tribal severance tax proceeds in favor of Aircraft Equipment. The district court denied Kiowa's request, concluding the Tribe had "failed in its burden of showing irreparable injury." We disagree.

The grant of a preliminary injunction is within the sound discretion of the district court. *See Lundgrin v. Claytor* , 619 F.2d 61, 63 (10th Cir. 1980). A preliminary injunction may issue when the movant has shown that four conditions are met: 1) the movant will suffer irreparable harm unless the injunction issues; 2) there is a substantial likelihood the movant ultimately will prevail on the merits; 3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and 4) the injunction would not be contrary to the public interest. *Chemical Weapons Working Group* , 111 F.3d at

1489. Herein, the district court's ruling focused exclusively on the first condition, a showing of irreparable harm to the movant.

By way of demonstrating irreparable harm, the Tribe contended its creditors were seizing assets necessary to run the tribal government, thus interfering with the Tribe's ability to engage in self-government, and threatening a partial shutdown of a sovereign tribe's government. The Tribe also contended that the burdens of litigating in a court without jurisdiction over the Tribe constituted *per se* irreparable harm. The district court, however, concluded the Tribe failed to demonstrate it was incapable of posting a supersedeas bond or that such a bond would not prevent the threatened injury to Kiowa's ability to govern. Absent such a showing, the district court found it was simply not appropriate to issue a preliminary injunction."

Recognizing the sovereign status of the Kiowa Tribe, we are convinced the Tribe has made a sufficient showing of irreparable harm as a matter of law. First, the seizure of tribal assets, including severance taxes owed to the Tribe, and the concomitant prohibition against full enforcement of tribal laws, significantly interferes with the Tribe's self-government. *See Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 716 (10th Cir. 1989) (finding irreparable injury where

*threatened* loss of revenues and jobs created "prospect of significant interference with [tribal] self-government"). Second, the Tribe should not be compelled "to expend time and effort on litigation in a court that does not have jurisdiction over them." *Id*.; *see also Manufacturing Tech.,* 118 S. Ct. at 1705 (holding "Tribes enjoy immunity from suits on contracts"). The Tribe's full enjoyment of its sovereign immunity is irrevocably lost once the Tribe is compelled to endure the burdens of litigation. *Cf. Seminole Tribe v. Florida*, 116 S. Ct. 1114, 1124 (1996) (pointing out how the Eleventh Amendment immunity of a State "serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties'") (quoting *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

As we have noted, the decision of the district court relied only on the issue of irreparable harm and did not address the other three conditions required for issuance of a preliminary injunction. Accordingly, we reverse the district court's denial of a preliminary injunction and remand for further consideration of the Tribe's request consistent with this opinion.

## III

The district court's decisions to dismiss the Tribe's § 1983 action pursuant to the *Rooker-Feldman* doctrine and to deny the Tribe a preliminary injunction pending prosecution of the claim are **REVERSED**. The case is **REMANDED** to the district court for further consideration consistent with this opinion and in light of any subsequent action taken by the Oklahoma state courts in response to the Supreme Court's holding in *Manufacturing Tech.*