STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Josh J. EVANS, Respondent.

OBAD No. 1051.
SCBD No. 3838.

Supreme Court of Oklahoma.

May 3, 1994.

Dan Murdock, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Josh J. Evans, pro se.

OPALA, Justice.

In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Is the record[1] sufficient for a meaningful *de novo* consideration of the complaint's disposition? and (2) Is a two-year-and-a-day suspension with imposition of costs an appropriate disciplinary sanction to be imposed for Respondent's breach of professional discipline? We answer both questions in the affirmative.

The Oklahoma Bar Association [Bar] charged Josh J. Evans [Evans or respondent], a licensed lawyer, seventy-seven (77) years of age, with three counts of professional misconduct. After a hearing, a panel of the Professional Responsibility Tribunal [PRT] made findings of fact and conclusions of law together with a recommendation of discipline. The PRT ruled that respondent, due to a lack of understanding and ability, violated Rules 1.1, 1.3, and 1.4 of the Oklahoma Rules of Professional Conduct[2] and

---

1. The record before us consists of a transcript [in this cause], two depositions, and a transcript of the hearing on the application of Jerry Waide Hawley for post-conviction relief in Cause No. CRF–90–39. In this bar prosecution the parties submitted no fact stipulations.

2. The pertinent terms of Rules 1.1, 1.3, and 1.4, Oklahoma Rules of Professional Conduct, 5 O.S. 1991 Ch. 1, App. 3–A, state:
 "Rule 1.1. **Competence.**
 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thorough-

Rule 5.2 of the Rules Governing Disciplinary Proceedings.[3] It recommended Evans be suspended from the practice of law for two years and one (1) day and be required to pay the costs of this proceeding.

## FACTS IN SUPPORT OF COUNT I

On January 12, 1990, Jerry Waide Hawley [Hawley] hired respondent to defend him against five felony counts in Texas County District Court, Cause No. CRF–89–165. Later, on March 12, 1990, Hawley was charged with another felony in Cause No. CRF–90–39 in Texas County, and respondent once again agreed to represent him in this case. Cause No. CRF–90–39 was tried to a jury on June 21, 1990. Hawley was found guilty of attempted burglary *after former conviction of a felony*. He then pled guilty to all five (5) counts in Cause No. CRF–89–165. On July 3, 1990 Hawley was sentenced in Cause No. CRF–89–165 to forty (40) years in prison [with twenty-five (25) years "to do" and fifteen (15) years to be suspended]. In Cause No. CRF–90–39 he was sentenced to twenty-five (25) years in prison to run concurrently with his sentence in CRF–89–165.

During his representation of Hawley in Cause No. CRF–90–39, respondent was found to have engaged in the following conduct:

a. He failed to appear at a preliminary hearing scheduled for April 9, 1990, and the hearing proceeded in the presence of the uncounseled defendant.[4] At this preliminary hearing exhibits were introduced and witnesses examined, with a transcript taken by a court reporter. Respondent did not request that an additional preliminary hearing be set.

b. Before trial, respondent did not order a transcript of the preliminary hearing nor did he review the introduced exhibits that were a part of the record. Neither did he interview the State's witnesses.

c. Respondent failed to make an opening statement.[5]

d. Respondent failed to cross-examine some of the State's witnesses, including the eyewitness to the attempted burglary for which Hawley was tried.

e. Respondent failed to make a closing statement.[6]

---

ness, and preparation reasonably necessary for the representation."

\* \* \* \* \* \*

"Rule 1.3. **Diligence.**
 A lawyer shall act with reasonable diligence and promptness in representing a client."
"Rule 1.4. **Communication.**
 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

3. The pertinent terms of Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1, App. 1–A, state:

 "After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall ... (2) file and serve a copy of the grievance ... upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the lawyer's alleged misconduct unless the respondent's failure to do so is predicated upon expressed constitutional grounds.... *The failure of a lawyer to answer within twenty days (20)*

*days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline."*

4. The April 9, 1990 preliminary hearing was scheduled at a March 26, 1990 proceeding which the respondent attended. The *Record of the Proceedings Before Examining Magistrate*, dated April 9, 1990, reflects the following remarks by the judge:

 "The State [defendant, and court] does not know why Mr. Evans is not here today."
 "Mr. Evans has made a habit of appearing tardy or failing to appear at all in any number of cases."
The court then noted that the inception of the preliminary hearing was delayed approximately thirty (30) minutes but Mr. Evans did not appear.

5. While the record demonstrates that it may have been the respondent's intention to reserve his opening statement until later in the trial, this point in time never came for neither an opening nor closing statement was ever made by the respondent during the trial.

6. The respondent fell asleep before closing statements were made; and, when he awoke, he "didn't realize it was time for a closing." *See the*

f. Respondent failed to put on evidence during Phase II of the trial [7] which related to Hawley's former felony convictions. He admitted during this phase in a bench conference that he "didn't understand the procedure".

g. Respondent represented to Hawley that during Phase II, if Hawley did not testify during Phase I of the trial, the State could not put on evidence of his prior convictions.[8] Hawley would have considered the State's plea bargain offer if he had not received erroneous legal advice from the respondent.[9]

After the trial in Cause No. CRF–90–39 Alfred Maxwell, an assistant district attorney handling part of the State's case against Hawley, approached Hawley's parents to suggest that their son file an application for post-conviction relief. Hawley then initiated that quest. A hearing on his application was held October 24, 1990. During this proceeding, in which Hawley was represented by court-appointed counsel, Jim Loepp [Loepp], the district court inquired into the quality of the respondent's representation of Hawley in Cause No. CRF–90–39 and concluded his representation of Hawley was "substandard, incompetent". The court modified Hawley's sentence of forty (40) years by ordering that he serve ten (10) years instead of the earlier pronounced twenty-five (25) years of the sentence.

official transcript of the hearing on the Application for Post Conviction Relief, p. 74, statements of George H. Leach, Judge, District Court, Texas County. [Judge Leach was the trial judge in Cause No. CRF–90–39—the Jerry Waide Hawley trial.]

7. When a person is charged with a crime *after a prior conviction for a felony*, a *bifurcated* trial is required. The pertinent terms of 22 O.S.1991 § 860 are:

"In all cases in which the defendant is prosecuted for a second or subsequent offense ... the procedure shall be as follows:
(a) The trial shall proceed initially as though the offense charged was the first offense; when the indictment or information is read all reference to prior offenses shall be omitted; during the trial of the case no reference shall be made nor evidence received of prior offenses except as permitted by the rules of evidence; the judge shall instruct the jury only on the offense charged; the jury shall be further instructed to determine only the guilt or innocence on the

## FACTS IN SUPPORT OF COUNT II

In early October 1990 Michael D. Melius [Melius] was arrested and charged with several drug-related offenses. During trial on these criminal charges he was represented by Loepp, who was appointed by the court. Melius was acquitted of all charges by verdict dated March 4, 1991.

Shortly after Melius' arrest on October 8, 1990, he was served with *Notice of Forfeiture and Seizure* of his pick-up truck [Cause No. C–90–212] and of the cash in his possession [Cause No. C–90–211] when he was apprehended. Although Loepp [the public defender] did assist Melius by providing him an answer form which could be used to respond to the notice, Loepp informed Melius he could not represent him in the forfeiture proceeding. Melius appeared *pro se* at the forfeiture hearing. The district court found against him and on March 22, 1991 ordered his personal property forfeited. During that hearing the State discovered that Melius had no notice regarding its forfeiture quest of a pistol, also seized when he was arrested.

After the March 22, 1991 hearing Melius retained respondent to represent him in an appeal from the order forfeiting the truck and cash and to contest the state claim to forfeit his pistol. Melius was served on April

offense charged, and that punishment at this time shall not be determined by the jury.
(b) If the verdict be guilty of the offense charged, that portion of the indictment or information relating to the prior offenses shall be read to the jury and *evidence of prior offenses shall be received.* [Emphasis added.] The court shall then instruct the jury on the law relating to second and subsequent offenses...."
The genesis of 22 O.S.1991 § 860 is found in *Harris v. State*, Okl.Cr., 369 P.2d 187 (1962), where the court crafted the *bifurcated-trial* procedure for use in cases where a subsequent or second offense is part of the charge in an indictment or information.

8. In reliance on respondent's advice, Hawley did not testify during Phase I of the trial in Cause No. CRF–90–39.

9. Alfred Maxwell, an assistant district attorney who participated in the prosecution of Hawley's case, tried to negotiate a plea bargain with Evans. He was informed that, because he [Evans] "did not have to do his [Hawley's] time," he did not have to negotiate with the district attorney.

26, 1991 [Cause No. C–91–64] with notice of the claim to forfeit his pistol. He paid respondent a "retainer" of five hundred dollars ($500.00) for the forfeiture-related services.[10]

On several occasions Melius wrote respondent to inquire about the lawyer's efforts to secure the return of Melius' personal property. Not only did respondent *fail to communicate* with his client about these matters, he also did not respond, plead or appear in Cause No. C–91–64—the proceeding to forfeit the pistol. The hearing in the latter cause, which was held on August 9, 1991, more than four months after respondent was retained by Melius, resulted in a forfeiture order. Respondent *completely failed to take any legal action* on Melius' behalf in any of the forfeiture-related proceedings.

### FACTS IN SUPPORT OF COUNT III

Following July 19, 1991 the Bar began receiving complaints from Melius about the respondent's lack of services described in Count II above. Initially, the Bar requested respondent to communicate with his client. Then, on August 25, 1991, the Bar received from Melius a letter alleging facts which are the substance of its Count II. Pursuant to Rule 5.2, Rules Governing Disciplinary Proceedings,[11] the Office of the General Counsel mailed to Evans, at his current roster address, notice that the General Counsel was initiating a grievance and advising Evans he was to file a written response within twenty (20) days. *Evans did not respond.* The Office of the General Counsel then notified the respondent [by certified mail] that he should file a written response in five (5) days of receiving the certified letter. *Evans again did not respond.*

When respondent did not file a response to the second letter, the Professional Responsibility Commission issued a subpoena *duces tecum* commanding him to appear for deposition on December 5, 1991. The respondent's deposition was taken on December 12, 1991. He admitted to not responding *intentionally* to the letters of the Office of the General Counsel because requiring him to do so seemed "silly".

I

### THE RECORD BEFORE THE COURT IS COMPLETE FOR A *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

 The Oklahoma Supreme Court has exclusive original jurisdiction over Bar disciplinary proceedings.[12] The court's review is conducted by *de novo* consideration of the prosecution brought before us.[13] Neither the PRT panel's findings nor its assessments with respect to the weight or credibility of the evidence can bind this court.[14] In a *de novo* consideration, in which the court exercises its constitutionally invested, nondelegable power to regulate both the practice of law and the legal practitioners,[15] a full-scale exploration of all relevant facts is mandatory.[16]

10. The retainer was paid in two payments—one of $300.00 mailed to Evans on March 29, 1991 and one for $200.00 mailed to Evans during the first part of April 1991.

11. For the pertinent text of Rule 5.2, Oklahoma Rules Governing Disciplinary Proceedings, see *supra* note 3.

12. *State ex rel. Okl. Bar Ass'n v. Raskin*, Okl., 642 P.2d 262, 265 (1982); *Tweedy v. Okl. Bar Ass'n*, Okl., 624 P.2d 1049, 1052 (1981); *In re Integration of State Bar of Oklahoma*, 185 Okl. 505, 95 P.2d 113, 114 (1939).

13. *State ex rel. Okl. Bar Ass'n v. Lloyd*, Okl., 787 P.2d 855, 858 (1990); *Okl. Bar Ass'n v. Stubblefield*, Okl., 766 P.2d 979, 982 (1988); *State ex rel. Okl. Bar Ass'n v. Cantrell*, Okl., 734 P.2d 1292, 1293 (1987); *Raskin, supra* note 12 at 265–266. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudicative process must be supervised by our *de novo* consideration. This attribute of nondelegable jurisdiction serves to distinguish bar disciplinary functions from trial *de novo*—a retrial in a different court—or even from *de novo* appellate review on the record. The latter stands for an independent, non-deferential examination of another tribunal's record.

14. *Raskin, supra* note 12 at 265.

15. *Raskin, supra* note 12 at 266; *Tweedy, supra* note 12 at 1052.

16. *State ex rel. Okl. Bar Ass'n v. Dugger*, Okl., 385 P.2d 486 (syllabus) (1963).

The court's task cannot be discharged unless the PRT panel submits a complete record of proceedings for a *de novo* examination of all pertinent issues.[17] Our responsibility is hence to ensure that the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline[18] that would avoid the vice of visiting disparate treatment on the respondent-lawyer.[19]

The record is adequate for our *de novo* consideration of Evans' alleged professional misconduct.

## II

### A TWO–YEAR–AND–ONE–DAY SUSPENSION IS AN APPROPRIATE SANCTION FOR RESPONDENT'S PAST PROFESSIONAL MISCONDUCT

The court's responsibility in a disciplinary proceeding is not to punish but to inquire into the lawyer's continued fitness, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[20] The circumstances of a lawyer's professional misconduct (Rule 6)[21] are important in searching for solutions that would accord with the law's imperative of ensuring the public its due protection from substandard lawyers.[22] The complaint against Evans was pressed as a Rule 6 proceeding, which focuses on the lawyer's *offending past conduct.*[23]

Evans has been charged with (1) failure to provide his clients with competent representation in the criminal and forfeiture cases with which he was entrusted,[24] (2) lacking diligence and promptness in representing his clients,[25] (3) not keeping his clients informed,[26] and (4) failure to comply with the Rules Governing Disciplinary Proceedings by not *timely* responding to the Bar's inquiry.[27] Professional competence—*i.e.,* acting

**17.** Rule 6.13, Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A. Rule 6.13 provides in part that:
"... [T]he Trial Panel shall file with the Clerk of the Supreme Court a written report which *shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law....*" [Emphasis added.]

**18.** A complete record is essential for review of a bar disciplinary proceeding. The material to be reviewed is never to be deemed settled beyond our ability·to expand it. The record always remains within this court's plenary power to expand by an order for its supplementation. *State ex rel. Okl. Bar Ass'n v. Moss,* Okl., 794 P.2d 403, 404 (1990); *State ex rel. Okl. Bar Ass'n v. Samara,* Okl., 683 P.2d 979, 983 (1984); *State ex rel. Okl. Bar Ass'n v. Warzyn,* Okl., 624 P.2d 1068, 1071 (1981). *See State ex rel. Okl. Bar Ass'n v. Armstrong,* Okl., 791 P.2d 815, 816 (1990), which teaches that an interim suspension of a lawyer cannot be made on an incomplete record. The same problem confronted this court in *State ex rel. Okl. Bar Ass'n v. Lloyd, SCBD No. 3455,* received November 17, 1987 [*Lloyd I*]. There, we declined to accept the trial panel's recommendation and returned the case for a full evidentiary hearing before the panel whence it came. For an explanation, see *Lloyd, supra* note 13 at 856 [*Lloyd II*].

**19.** *State ex rel. Okl. Bar Ass'n v. Perceful,* Okl., 796 P.2d 627, 630 (1990).

**20.** *State ex rel. Okl. Bar Ass'n v. Donnelly,* Okl, 848 P.2d 543, 545–46 (1992); *State ex rel. Okl. Bar Ass'n v. Colston,* Okl., 777 P.2d 920, 925 (1989); *State ex rel. Okl. Bar Ass'n v. Moss,* Okl., 682 P.2d 205, 207 (1983); *State ex rel. Okl. Bar Ass'n v. Harlton,* Okl., 669 P.2d 774, 777 (1983); *Raskin, supra* note 12 at 267.

**21.** Rule 6 (Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A. A Rule 6 proceeding focuses on the lawyer's *past professional misconduct.*

**22.** *Donnelly, supra* note 20 at 547–48.

**23.** This approach, which is necessary to safeguard public interest and to protect the judicial system, also is designed to deter the respondent from offending behavior in the future and to discourage other members of the Bar from like derelictions. *State ex rel. Okl. Bar Ass'n v. Arnett,* Okl., 815 P.2d 170, 171 (1991); *State ex rel. Okl. Bar Ass'n v. Denton,* Okl., 598 P.2d 663, 665 (1979).

**24.** Rule 1.1, Oklahoma Rules of Professional Conduct, *supra* note 2.

**25.** Rule 1.3, Oklahoma Rules of Professional Conduct, *supra* note 2.

**26.** Rule 1.4, Oklahoma Rules of Professional Conduct, *supra* note 2.

**27.** Rule 5.2, Rules Governing Disciplinary Proceedings, *supra* note 3.

promptly in pending matters and communicating with a client—is a *mandatory obligation* imposed upon licensed practitioners. Albeit onerous, this obligation is the *very minimum* to be expected from a lawyer. It epitomizes professionalism. Anything less is a breach of a lawyer's duty to serve the client.[28] As reflected by the record, Evans' conduct represents a marked departure from these standards.

 A lawyer's license is a certificate of professional fitness to deal with the public as a legal practitioner. Public confidence in the practitioner is essential to the proper functioning of the profession. A *lawyer's misconduct* adversely reflects on the entire Bar because it exhibits a lack of commitment to the clients' causes, to the courts, and to other members of the Bar. Evans' actions call for the imposition of discipline.

On *de novo* review, we find the three counts of the Bar's complaint amply supported by clear and convincing record proof.[29] The PRT panel's recommendation that Evans be suspended from the practice of law for a two-year-and-one-day interval is accordingly approved. *Within thirty days of the date of this opinion Evans shall pay the costs incurred in this proceeding in the amount of $3,652.77.*

Respondent stands suspended for two years and one day from the day this opinion becomes final. As a precondition for his reinstatement eligibility, he must promptly pay the costs incident to this disciplinary prosecution.

All Justices concur.

---

28. *Raskin, supra* note 12 at 267.

29. The pertinent terms of Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1, App. 1–A, state:

"(c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by *clear and convincing* evidence,...." [Emphasis added.]