2001 OK 80

STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Robert L. STORMONT, Respondent.

No. SCBD 4512.

Supreme Court of Oklahoma.

Sept. 25, 2001.

---

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Charles F. Alden, III, Hudson & Alden, Oklahoma City, OK, for Respondent.

## OPINION

WATT, V.C.J.:

¶ 1 On December 9, 1999, the Oklahoma Bar Association filed a complaint alleging professional misconduct by Respondent, Robert L. Stormont. Stormont filed his answer on January 11, 2000.

¶ 2 On August 11, 2000, the Bar deposed Stormont and on January 9, 2001, a trial panel of the Professional Responsibility Tribunal conducted a hearing. The parties entered into stipulations of fact, conclusions of law, and recommended discipline, which were attached in an exhibit to the Trial Panel's report, filed February 22, 2001. On March 16, 2001, the Bar filed an application to assess costs in the amount of $2,358.07.

## COUNT I

¶ 3 In April 1996, Shirley Bryant was injured in an automobile accident. In April 1997, she hired Stormont to represent her and settled the case on September 8, 1997 for $15,000. Stormont received a contingent fee of $5,000.00 and held out $5,513.00 of the settlement funds to pay medical expenses incurred by Ms. Bryant. He set aside $119.14 for office expenses and gave Ms. Bryant the remainder of the settlement pro-

ceeds, $4,267.86. Stormont agreed to pay the medical bills from the funds he held out at the time the settlement was received.

¶ 4 Soon after the settlement, Ms. Bryant began to receive bills from her medical providers and learned that they had not been paid. Ms. Bryant then made several attempts to contact Stormont but he did not return her phone calls.

¶ 5 On February 6, 1998, Ms. Bryant went to Stormont's office. Stormont told her at that time that checks for the medical bills had been made out and mailed and that he would check on it and get back with her. She did not hear from Stormont so she went back to his office and inquired again on February 17, 1998. Stormont again told Ms. Bryant that he would check on the matter and get back in touch with her but he did not do so.

¶ 6 Ms. Bryant returned to Stormont's office in March and April, 1998 and was told on both occasions that he would follow up on the matter. Again, Stormont did not do so. Finally, on June 25, 1998, Ms. Bryant filed a written complaint with the Oklahoma Bar Association complaining of Stormont's failure

to pay her medical bills or assist her in seeing that they were paid for a period of ten months.

¶ 7 The Bar notified Stormont of Ms. Bryant's complaint against him and Stormont responded. He included copies of checks he had made out to Ms. Bryant's medical providers in his response and alleged that he had "requested [that they be] mailed to providers." Stormont could not explain why the checks were never received by the providers. He then issued new checks and paid Ms. Bryant's medical providers.

¶ 8 The Bar examined Stormont's trust account statements for the period between the date the first checks to Ms. Bryant's medical providers were issued, in September 1997, and the date Stormont actually paid them, in June and July 1998. The Bar's examination of these records revealed that during the period between September 1997 and June 1998 Stormont's trust account had insufficient balances to cover the amounts owed to Ms. Bryant's medical providers.

¶ 9 The parties stipulated that Stormont's conduct described above violated Rules 1.3,[1] 1.4,[2] 1.15,[3] and

1. Rule 1.3, Oklahoma Rules of Professional Conduct, provides in material part:
   ... A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf....

2. Rule 1.4, Oklahoma Rules of Professional Conduct, provides:
   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

3. Rule 1.15, Oklahoma Rules of Professional Conduct, provides:
   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer

and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
(d) Trust Accounts. A lawyer or law firm may create and maintain an interest-bearing demand trust account and may deposit therein all funds of clients to the extent permitted by applicable banking laws, that are nominal in amount or are on deposit for a short period of time. Maintenance of such trust account balances in noninterest-bearing trust accounts

8.4(a),[4] Oklahoma Rules of Professional Conduct; and Rule 1.4(b),[5] Rules Governing Disciplinary Proceedings.

## COUNT II

¶ 10 The Bar also examined additional Stormont trust account records. Those account records revealed that Stormont habitually held clients' funds for weeks and sometimes months before paying them, including funds owed to medical providers. Stormont also kept his own funds and attorney fees in his trust account and periodically wrote checks to himself and to pay office and personal expenses without recording the specific source of the funds that covered those checks.

¶ 11 Stormont and the Bar stipulated that Stormont's misconduct, set out in this count, violated Rule 1.4(c), Oklahoma Rules of Professional Conduct. The parties further stipulated, however that Stormont's misconduct constituted simple conversion, not misappropriation, according to this Court's interpretation of Rule 1.4(c) set out in *State, ex rel. Oklahoma Bar Association v. Johnston*, 1993 OK 91 ¶ 24 25, 863 P.2d 1136, 1144. We agree.

## FACTORS IN MITIGATION

¶ 12 Stormont has been a practicing lawyer since 1966 and before this matter arose had never been charged with ethical misconduct by the Bar nor been disciplined by this Court. Further, none of Stormont's clients has ever lost any money as a result of Stormont's misconduct and all non-clients who were entitled to payment from Stormont's trust account have been fully paid.

## RECOMMENDED DISCIPLINE

¶ 13 Based on the foregoing stipulated facts the parties agreed that appropriate dis-

will still be permitted. The attorney electing to utilize interest-bearing trust accounts shall comply with the following provisions:

(1) the Interest Bearing Demand Trust Account may be established with any bank or savings and loan association authorized by federal or state law to do business in Oklahoma and insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation;

(2) the rate of interest payable on any interest-bearing demand trust account shall not be less than the rate paid by the depository institution to regular, nonattorney depositors. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minimums, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm so long as there is no impairment of the right to withdraw or transfer principal immediately (except as accounts generally may be subject to statutory notification requirements), even though interest may be sacrificed thereby;

(3) the depository institution shall be directed: (A) to remit interest or dividends, as the case may be, on the average monthly balance in the account, at least quarterly, to the Oklahoma Bar Foundation, Inc.; and

(B) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or the law firm for whom the remittance is sent and rate of interest applied; and

(4) in the event that any client asserts a claim against an attorney based upon such attorney's determination to place client advances in the Interest Bearing Demand Trust Account because such balance is nominal in amount or held for a short period of time, the Foundation shall, upon written request by such attorney, review such claim and either:

(A) approve such claim (if such balances are found not to be nominal in amount or short in duration) and remit directly to the claimant any sum of interest remitted to the Foundation on account of such funds; or

(B) reject such a claim (if such balances are found to be nominal in amount or short in duration) and advise the claimant in writing of the grounds therefor. In the event of any subsequent litigation involving such a claim, the Foundation shall interplead any such sum of interest and shall assume the defense of the action.

4. Rule 8.4(a), Oklahoma Rules of Professional Conduct provides:

It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

5. Rule 1.4(b), Rules Governing Disciplinary Proceedings, provides:

(b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

cipline would be the suspension of Stormont's privilege to practice law for a period of eighteen months. At the conclusion of the hearing before the trial panel, at which Stormont and an investigator for the Bar testified, the trial panel recommended to this Court that Stormont be suspended from practicing law for eighteen months and pay the costs of the proceeding.

## DISCUSSION

¶ 14 There is no dispute here as to either the facts or the law. Stormont and the Bar stipulated both to the facts and to which of the Oklahoma Rules of Professional Conduct and Rules Governing Disciplinary Proceedings Stormont had violated. The trial panel accepted those stipulated findings and recommended the same discipline as that stipulated to by the parties, an eighteen month suspension from the law practice and the payment of costs. As is our duty, we have considered this matter *de novo*, that is we have examined the record independently and non-deferentially. *State ex rel. Oklahoma Bar Association v. Evans*, 1994 OK 45 ¶ 12, 880 P.2d 333, 337. Our independent examination of the record leads to conclude that the record supports the facts stipulated to by the parties, the application of the law to those facts made by the trial panel, and the recommended discipline.

¶ 15 Stormont has stipulated that he violated Rule 1.3, Oklahoma Rules of Professional Conduct, by failing to "act with reasonable diligence and promptness in representing a client." He also admits that he violated Rule 1.4(a), Oklahoma Rules of Professional Conduct, by failing to keep Ms. Bryant "reasonably informed about the status of a matter" and in not fulfilling his obligation to Ms. Bryant to "promptly comply with reasonable requests for information." Additionally, Stormont concedes that he violated Rule 1.15(a), Oklahoma Rules of Professional Conduct, in failing to hold the money owed to Ms. Bryant's medical providers "separate from the lawyer's own property."

¶ 16 Most seriously, Stormont admits that he violated Rule 1.4, Rules Governing Disciplinary Proceedings. Rule 1.4(b) provides, "Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose." Rule 1.4(c) provides, "Theft by conversion or otherwise of the funds of a client, if proved, result in disbarment." Although Stormont long delayed payment of the money he held to Ms. Bryant's medical providers, we conclude that disbarment is not called for here.

¶ 17 In *State, ex rel. Oklahoma Bar Association v. Johnston*, 1993 OK 91 ¶ 24–25, 863 P.2d 1136, 1144, we distinguished "simple conversion," from "misappropriation, i.e. 'theft by conversion or otherwise'" as that term is used in Rule 1.4. We held there that where the lawyer "did not intend to misappropriate his client's money," disbarment is not called for. Here there was no misappropriation of funds by Stormont; there was only a delay, albeit a lengthy one, in paying them. Further, neither Ms. Bryant, nor her medical providers ultimately suffered any loss as a result of Stormont's misconduct. Consequently, we agree with the parties and the trial panel that a suspension of eighteen months is appropriate. We find that Stormont's misconduct set out in the record is supported by clear and convincing evidence. The trial panel's recommendation that Stormont be suspended for eighteen months is accordingly adopted. Within thirty days of the date of this opinion Stormont shall pay the costs incurred in this proceeding in the amount of $2,358.07. Payment of those costs as ordered shall be a pre-condition to Stormont's readmission to the law practice at the conclusion of his suspension.

¶ 18 HARGRAVE, C.J., WATT, V.C.J., LAVENDER, OPALA, KAUGER, SUMMERS, BOUDREAU, WINCHESTER, JJ.—concur.

¶ 19 HODGES, J.—disqualified.