2008 OK 22

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**John Matthew WHITWORTH, Respondent.**

**SCBD No. 4900.**

Supreme Court of Oklahoma.

March 11, 2008.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

John Matthew Whitworth, Bartlesville, Oklahoma, Respondent pro se.

COLBERT, J.

¶1 The Oklahoma Bar Association (OBA) filed a complaint and three amended complaints against attorney John Matthew Whitworth (Respondent). The OBA alleged in eleven counts that Respondent violated the Oklahoma Rules of Professional Conduct (ORPC), Okla. Stat. tit. 5, ch. 1, app. 3–A (2001 & Supp.2007), and the Oklahoma Rules Governing Disciplinary Proceedings (RGDP), Okla. Stat. tit. 5, ch. 1, app. 1–A (2001 & Supp.2007). Respondent admitted to some of the allegations. He also admitted that he violated the ORPC and the RGDP and admits that he should be suspended from the practice of law in order to adequately deal with his addiction to methamphetamine.

¶2 The OBA brought Rule 6 disciplinary proceedings. Nothing in the record indicates whether the General Counsel considered seeking a Rule 10 suspension based on Respondent's habitual use of a drug that impairs or tends to impair his ability to efficiently and properly represent clients.

¶3 On May 30, 2007, the Professional Responsibility Tribunal (PRT) conducted a hearing. The PRT found that Respondent had violated the ORPC and the RGDP and recommended that he be suspended from the practice of law for two years and one day, be required to contract with Lawyers Helping Lawyers to remain sober and drug free, be

ordered to pay restitution, and be directed to pay the costs of the proceedings.

¶ 4 For the reasons stated in this opinion, Respondent is suspended pursuant to Rule 6 for a period of two years beginning June 26, 2006, the effective date of his current suspension for noncompliance with mandatory continuing legal education requirements. Further, because this Court finds that Respondent is personally incapable of practicing law due to his admitted addiction to methamphetamine, he is also suspended pursuant to Rule 10. Upon regaining sobriety and upon the expiration of his Rule 6 suspension period, Respondent may seek reinstatement by demonstrating his sobriety and by meeting all the requirements for Rule 11 reinstatement.

 ¶ 5 In bar disciplinary proceedings, this Court exercises its constitutional, nondelegable power to regulate the practice of law and legal practitioners. *State ex rel. Okla. Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 15, 880 P.2d 339, 344. This Court decides whether misconduct has occurred and, if so, the appropriate discipline to be imposed. *State ex rel. Okla. Bar Ass'n v. Todd,* 1992 OK 81, ¶ 2, 833 P.2d 260, 262. The OBA must present clear and convincing evidence that the accused lawyer violated the lawyer's ethical rules. *State ex rel. Okla. Bar Ass'n v. Rogers,* 2006 OK 54, ¶ 9, 142 P.3d 428, 432. In its de novo review, this Court is not bound by the PRT's findings of fact, its view of the evidence, its view of the credibility of witnesses, or its recommendations of discipline. *Todd,* 1992 OK 81, ¶ 2, 833 P.2d at 262.

## I. ALLEGATIONS AND DETERMINATIONS OF RESPONDENT'S MISCONDUCT

¶ 6 As part of Counts III, IV, V, VI, and VII and as the only basis for Counts IX and XI, the OBA alleges that Respondent failed to timely respond to its requests to address grievances. These allegations are addressed here and are excluded in the analysis of the individual counts addressed in this opinion. Respondent admits to these allegations. The OBA alleged and this Court finds that Respondent violated ORPC Rule 8.1(b)[1] and RGDP Rule 5.2[2] by failing to respond to the OBA's requests for information.

## COUNT I

 ¶ 7 Count I alleges that on September 12, 2002, a client paid Respondent $2,000 to complete a stepparent adoption. Respondent did not return the client's calls or otherwise communicate with her and failed to do any work on the adoption. By this conduct, Respondent violated ORPC Rules 1.1,[3] 1.3,[4] and 1.4.[5]

1. Rule 8.1 of the ORPC provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connections with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

2. Rule 5.2 of the RGDP requires a lawyer to respond within twenty days after the General Counsel of the OBA serves the lawyer with a copy of a grievance or with a recital of relevant facts or allegations. A lawyer's failure to do so is grounds for discipline.

3. Rule 1.1 of the ORPC provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

4. Rule 1.3 of the ORPC provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

5. During the time of Respondent's conduct at issue, Rule 1.4 of the ORPC provided:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

A subsequent amendment to Rule 1.4, which changed this language, took effect January 1, 2008.

¶ 8 Respondent admits the allegations but contends that he did some initial work on the adoption but stopped working on the case soon thereafter. Respondent also admits that he did not file an adoption petition. He testified that he contacted the OBA, admitted the allegations, and offered that he should have to repay the fee and pay another attorney's fee for completing the adoption. At the hearing, Respondent acknowledged that he had not repaid the $2,000.

¶ 9 This Court finds that Respondent violated ORPC Rule 1.1 by failing to "provide competent representation to a client." Respondent also violated ORPC Rule 1.3 by failing to act with diligence and promptness in representing a client, and Rule 1.4 by failing to keep a client reasonably informed.

## COUNT II

¶ 10 Count II alleges that on January 31, 2002, Respondent undertook representation of Ms. B. in six felony cases after being paid $500 as a partial fee. It is further alleged that he made sexual advances toward her.

¶ 11 Respondent presented evidence on this issue, and the OBA did not present any evidence in rebuttal. This Court finds that the evidence that Respondent had a sexual relationship with a client during or close in time to his representation is completely lacking. Thus, the OBA has not proven the allegations in Count II by clear and convincing evidence.

## COUNT III

¶ 12 In Count III, the OBA alleged that, in May 2002, Mr. Skelton paid Respondent $200 to represent him on two traffic citations issued by the City of Sallisaw. Respondent told his client that the tickets were taken care of and that they would not appear on his driving record. Thereafter, Skelton's wife called the city clerk's office and was told

that there was an outstanding warrant for Skelton's arrest and that his driver's license was in the process of being suspended. Skelton then made contact with Respondent who told him that the information from the city clerk's office was a lie and that Respondent would get it straightened out. Skelton was unable to reach Respondent thereafter, and Respondent did not return Skelton's telephone calls. Further, Respondent did not communicate with Skelton and did not begin work on the matter.

¶ 13 Respondent testified that he obtained a deferred sentence for Skelton. He acknowledged that Skelton's license was suspended but contended the suspension was caused by a scrivener's error in the municipal court. The OBA admitted that Skelton's license was reinstated.[6] Further, Respondent testified that he did not believe that Skelton was ever arrested or jailed.

¶ 14 The evidence supports Respondent's testimony that the citations were handled by deferral and dismissal, and the OBA did not rebut this evidence. This Court finds that the OBA did not prove the allegations in Count III by clear and convincing evidence.

## COUNT IV

¶ 15 The OBA alleged that Respondent had taken a fee to represent a client but had failed to perform any work. The OBA did not present any evidence in support of this allegation and, at the hearing, asked that Count IV be dismissed. Because of the lack of evidence to support the allegation, Count IV is dismissed.

## COUNT V

¶ 16 Count V alleges that Respondent was guilty of the charge of driving a motor vehicle with a suspended license. The OBA asserted that this conduct violated ORPC Rule 8.4(a), (b), and (c)[7] and RGDP Rule

---

6. The OBA stated that exhibit number 23 shows a release of the suspension, but exhibit number 23 is in fact a court record containing information about the citation and showing a payment of $200. The OBA's questions lead to the conclusion that Skelton's license was reinstated.

7. Rule 8.4(a), (b), and (c) of the ORPC provides:

It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

1.3.[8] Respondent admitted that he had been charged with and was guilty of driving with a suspended license.

¶ 17 ORPC Rule 8.4 provides that it is misconduct for a lawyer (a) to violate or attempt to violate the ORPC or to assist or induce another to violate the ORPC, (b) to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," or (c) to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The comment to Rule 8.4 states: "[A] lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category." Driving with a suspended license, standing alone, does not fall into this category. Likewise, RGDP Rule 1.3, prohibiting acts contrary to accepted standards of conduct, was not intended to apply to violations such as this without other acts of disregard for the law. As to Count V, Respondent's driving with a suspended license, standing alone, does not violate ORPC Rule 8.4 or RGDP Rule 1.3.

## COUNT VI

■■■ ¶ 18 The OBA alleged that Respondent obtained and was charged with obtaining merchandise by use of a false or bogus check. The OBA alleged that this conduct violated ORPC Rule 8.4(a), (b), and (c) and RGDP Rule 1.3.

¶ 19 Respondent testified that he thought he had $10,000 in his personal checking account when he wrote the check and that he had written several other checks on the account while it was overdrawn. He further testified that he had paid all of the checks, that a misdemeanor charge was filed against him, that the district attorney's office agreed to dismiss the charges and reneged, and that the charge was eventually dismissed. The OBA failed to present evidence to dispute Respondent's testimony that he did not know the account funds were depleted when he wrote the checks.

¶ 20 In addition to the factual allegations contained in Count VI, Respondent admitted that he intentionally ignored a court's order to appear as a tactical move in the criminal case and a bench warrant was issued for his arrest. While a lawyer intentionally ignoring a court order cannot be condoned, under these specific facts, this Court is reluctant to second guess Respondent's strategy in a criminal case and sanction him for ignoring the court's order. Further, nothing in the complaints would have alerted Respondent that he would need to defend against this charge. See State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 8, 23 P.3d 268, 272–73 ("A lawyer in a disciplinary proceeding receives the protection of the Due Process Clause, and must be given notice of the allegations of misconduct, or the claims of the 'opposing party.' ").

¶ 21 When this Court has imposed discipline under ORPC Rule 8.4 for writing bogus checks, the checks were written on trust accounts. See State ex rel. Okla. Bar Ass'n v. Seratt, 2003 OK 22, 66 P.3d 390; State ex rel. Okla. Bar Ass'n v. Phillips, 2002 OK 86, 60 P.3d 1030; State ex rel. Okla. Bar Ass'n v. Patmon, 1997 OK 62, 939 P.2d 1155. The OBA has failed to cite any authority where the facts are similar to those presented here. In this case, there is no evidence the checks were written on a trust account, Respondent testified that he did not know that there were insufficient funds in the account to cover the checks, and Respondent paid the amounts of the checks along with the district attorney's fees. There is insufficient evidence to find that Respondent violated

---

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
The subsequent amendment of Rule 8.4, effective January 1, 2008, did not change the quoted language.

8. Rule 1.3 of the RGDP provides:
The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

ORPC Rule 8.4 as alleged in Count VI. Likewise, without evidence that Respondent continued to write checks on the account after he knew it was overdrawn, this Court does not find that he violated RGDP Rule 1.3 as alleged in Count VI.

### COUNT VII

 ¶ 22 The OBA alleged and Respondent admitted that he failed to appear on behalf of a client in the Circuit Court of Sebastian County, Arkansas, in August 2005. The court cited Respondent for contempt, issued a show cause order, and ordered him to appear on August 10, 2005. When Respondent failed to appear and show cause on August 10, 2005, the court issued a bench warrant for contempt of court and for interfering with the administration of justice. The warrant is still outstanding, and Respondent has demonstrated no intention of resolving the warrant. The OBA alleged that this conduct violated ORPC Rules 1.1, 1.3, 1.4, and 8.4(a), (b), and (d) [9] and RGDP Rule 1.3.

¶ 23 This Court finds that Respondent violated ORPC Rule 1.1, by failing to provide competent representation to his client, Rule 1.3, by failing to "act with reasonable diligence and promptness in representing a client," Rule 1.4, by failing to adequately communicate with a client, and Rule 8.4(d), by engaging "in conduct that is prejudicial to the administration of justice." This Court also finds that Respondent violated RGDP Rule 1.3 by acting contrary to prescribed standards of conduct.[10]

### COUNT VIII

 ¶ 24 On June 27, 2005, this Court issued an order suspending Respondent from the practice of law for noncompliance with mandatory continuing legal education requirements. The OBA alleged that on June 29, 2005, while suspended, Respondent accepted a fee to represent a client in a criminal matter and that this conduct violated ORPC Rules 5.5 [11] and 8.4(c) and RGDP Rule 1.3.

¶ 25 According to Respondent, the client contacted him and he had already done some work on the case before June 29, 2005. Respondent testified that, when he appeared in district court and waived the client's preliminary hearing on June 29, 2005, he was unaware of the suspension order.

¶ 26 It is plausible that when Respondent received a payment for services and appeared in court on June 29, 2005, he had not received the suspension order filed on June 27, 2005. It is also plausible that he had previously done the legal work for which the $500 was paid. The OBA did not present any evidence that refuted Respondent's testimony.

¶ 27 In *State ex rel. Oklahoma Bar Association v. O'Neal,* 1993 OK 61, 852 P.2d 713, a lawyer appeared in two bankruptcy cases when he had actual knowledge that he had been administratively suspended. This Court utilized four factors a court should examine before determining the appropriate discipline. *Id.* ¶ 7, 852 P.2d at 715 (quoting the 1991 ABA Standards for Imposing Lawyer Sanctions). The applicable factors in this matter are (1) the ethical duty and to whom it was owed and (2) the lawyer's mental state.

¶ 28 Here, Respondent owed a duty to the legal profession and he apparently was un-

---

9. Rule 8.4(d) of the ORPC provides:
 It is professional misconduct for a lawyer to:
 \* \* \* \*
 (d) engage in conduct that is prejudicial to the administration of justice.
 The subsequent amendment of Rule 8.4, effective January 1, 2008, did not change the quoted language.

10. Rules 1.1 and 1.3 of the Arkansas Rules of Professional Conduct are the same as ORPC Rules 1.1 and 1.3. *See* Ark. R. Prof'l Conduct 1.1, 1.3. Arkansas disciplines lawyers for failing to provide adequate representation and for failing to diligently pursue their clients' cases. *See*

*Ligon v. Price,* 360 Ark. 98, 200 S.W.3d 417 (2004).

11. Rule 5.5 of the ORPC provides:
 A lawyer shall not:
 (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
 (b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.
 A subsequent amendment to Rule 5.5, which changed this language, took effect January 1, 2008.

aware of the suspension. Further, the alleged misconduct occurred two days after the suspension was filed, plausibly an insufficient time for delivery of out-of-town mail. These facts are distinguishable from the facts in *O'Neal.* Considering the facts here, Respondent should not be sanctioned for the acts alleged in Count VIII.

## COUNT X

¶ 29 The OBA alleged that Respondent was representing Ms. H. in a proceeding to regain custody of her children from the Oklahoma Department of Human Services (DHS). It is further alleged that Respondent failed to diligently and promptly notify Ms. H. of his administrative suspension from the practice of law and continued to accept payments for his services. The OBA asserted that this conduct violated ORPC Rules 1.3 and 8.4(c) and RGDP Rule 1.3.

¶ 30 Respondent's defense is that because of his legal representation, Ms. H. successfully obtained relief and was unharmed by his failure to appear at a hearing after his suspension. His testimony reflects that he does not feel he has violated the rules governing lawyers' conduct in this regard.

¶ 31 The evidence demonstrated that on June 26, 2006, Respondent was again suspended from the practice of law for failing to comply with mandatory continuing legal education requirements. That suspension has remained in effect since that date. In a letter dated July 15, 2006, Respondent informed Ms. H. of his suspension. The only credible, relevant testimony from Ms. H. concerning this count is that Respondent failed to appear at a hearing on the custody proceedings with DHS. The evidence demonstrated that Respondent continued to take payments from Ms. H. after his suspension. He contends that the fees were earned for work done before his suspension. The OBA did not present any evidence to rebut Respondent's testimony regarding the fees.

¶ 32 This Court finds that Respondent violated ORPC Rule 1.3 by failing to act with reasonable diligence and promptness in representing Ms. H. and RGDP Rule 1.3 by acting contrary to prescribed standards of conduct when he failed to appear in court. The fact that Ms. H. successfully regained custody of the children does not excuse Respondent's conduct in failing to appear at the hearing or promptly informing her of his suspension. However, the OBA did not present clear and convincing evidence that Respondent violated Rule 8.4(c) of the ORPC by engaging in dishonest, fraudulent, or deceitful conduct or misrepresentation.

## SUMMARY OF MISCONDUCT DETERMINATIONS AND RULE 6 DISCIPLINE

¶ 33 In summary, this Court finds that Respondent (1) violated ORPC Rule 8.1(b) and RGDP Rule 5.2 by failing to timely respond to the OBA's request for information concerning grievances against him, (2) violated ORPC Rules 1.1, 1.3, and 1.4 for undertaking the representation of a client and failing to complete the work for which he was retained as alleged in Count I, (3) violated ORPC Rules 1.1, 1.3, 1.4, and 8.4(d) and RGDP Rule 1.3 for failing to appear at a hearing on behalf of a client, ignoring a court order by failing to appear at a show cause hearing, and failing to resolve a bench warrant as alleged in Count VII, and (4) violated ORPC Rule 1.3 and RGDP Rule 1.3 by failing to appear at a scheduled hearing in court on behalf of his client as alleged in Count X. Respondent stands exonerated of the charges in Counts II, III, IV, VI, and VIII except for failing to respond to the OBA's requests for information.

¶ 34 This Court determines that Respondent's conduct warrants a suspension for a period of two years pursuant to Rule 6. This suspension shall run from June 26, 2006, the date Respondent was suspended for noncompliance with mandatory continuing legal education requirements. The Rule 6 suspension is independent of the suspension for personal incapacity which this Court imposes on Respondent today pursuant to Rule 10.

## II. APPLICATION TO ASSESS COSTS

¶ 35 The OBA has filed an application to assess the costs of these proceedings

in the amount of $1,525.60 against Respondent and has included documentation with the application. Respondent has not contested the motion. Under RGDP Rule 6.16, the costs of the investigation, the record, and disciplinary proceedings shall be surcharged against a lawyer unless otherwise ordered by this Court for good cause shown when discipline is imposed.

¶ 36 The OBA has not proven by clear and convincing evidence many of the charges it brought against Respondent. In fact, the OBA's evidence that Respondent violated the rules governing a lawyer's conduct as alleged in some counts is abjectly lacking. Because the OBA has brought allegations against Respondent for which it presented no evidence, Respondent should not have to bear a substantial amount of the costs associated with these proceedings. Thus, Respondent is ordered to pay costs of $300.

## III. CONSIDERATION OF RULE 10

¶ 37 Respondent freely admits his addiction to methamphetamine. He described it as a "huge catalyst" in the poor decisions that led to his financial problems and professional misconduct. At the same time, however, he refuses to attribute responsibility for his professional misconduct solely to his drug use, which he describes as an "easy scapegoat." He notes that his drug use began with his voluntary decision to engage in such conduct.

¶ 38 Respondent was questioned specifically about his habitual drug use by the General Counsel and by individual members of the PRT. Yet, there is nothing in the record to indicate that either the General Counsel or the PRT ever considered a Rule 10 suspension. Rather, the matter proceeded under Rule 6 with a recommendation by the OBA and the PRT of a suspension of two years and one day.

¶ 39 It is clear from the record that Respondent has a serious drug problem. He admitted that he needs time away from the practice of law to deal with his drug addiction and financial issues. It is equally clear that at the time of the hearing he was unwilling and unable to properly and efficiently represent clients. Respondent's circumstances call to mind this Court's recent decision in *State ex rel. Oklahoma Bar Association v. Albert*, 2007 OK 31, 163 P.3d 527.

¶ 40 Albert was charged with "eleven counts of professional misconduct resulting from irresponsible and neglectful representation of clients." *Id.* ¶ 1, 163 P.3d at 529. The Bar Association alleged "ineffective communication with clients, neglecting clients, mishandling cases, and failing to appear in court on behalf of clients." *Id.* The allegations of client neglect, failure to appear in court, and habitual drug use are very similar in the two cases. Yet, the resolution of the two matters could not have been more different.

¶ 41 The *Albert* matter was pursued under Rule 10, which provides for a suspension for personal incapacity to practice law, as well as Rule 6, which controls formal public proceedings involving lawyer misconduct. He was suspended initially for personal incapacity based on his addiction to alcohol and cocaine. The lawyer's addiction became a *mitigating* factor in the eventual imposition of discipline under Rule 6 despite his admission of "criminal conduct [possession of a controlled substance] which could have resulted in a conviction had the matter been pursued." *Id.* ¶ 22, 163 P.3d at 537. The lawyer received a retroactive suspension of approximately fourteen months "from the date he self-suspended" for treatment of his addiction until the opinion of this Court was adopted. *Id.* ¶ 23, 163 P.3d at 537.

¶ 42 In stark contrast to *Albert*, this matter was pursued only under Rule 6 despite the General Counsel's knowledge of Respondent's habitual methamphetamine use. There is no indication that anyone in the disciplinary process ever considered applying Rule 10 to these facts. Rather, the OBA urges that Respondent's "serious and continuing drug abuse" should be considered in imposing discipline. Thus, a substance addiction which mitigated the discipline imposed in *Albert* is urged to *enhance* the Rule 6 discipline to be imposed in this matter.

¶ 43 When compared with other disciplinary matters involving addicted lawyers such as *Albert*, this matter demonstrates the in-

consistent manner in which such lawyers are treated within the disciplinary process. The wide disparity in the discipline of addicted lawyers raises an important question: What determines whether a matter is pursued only under Rule 6 rather than Rule 10 when habitual substance abuse is involved? The process appears to be influenced more by the lawyer's status in the legal community than by his or her impairment.

¶ 44 Rule 10.1 defines "personally incapable of practicing law" to include the "[h]abitual use of [alcohol], hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair [the] ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law." The purposes of both Rule 10 and Rule 6 are to protect the public and to maintain the integrity of the legal system. While Rule 6 furthers those purposes through censure, suspension, and disbarment, Rule 10 does so by fostering lawyer sobriety.

¶ 45 A Rule 10 proceeding does not excuse conduct that violates the Rules of Professional Conduct. Rule 10.5 provides:

> Whenever a proceeding charging that a lawyer is personally incapable of practicing law is based upon conduct or neglect of duty in respect to the affairs of a client, the complaint must also allege specifically any such conduct which would justify the imposition of discipline, so that the Professional Responsibility Tribunal may hear evidence thereon, and in its report shall make findings and a recommendation as to whether the lawyer should be disciplined or whether [the lawyer] should be found personally incapable of practicing law.

In addition, Rule 10.11(a) provides that the "[p]rocedures for reinstatement of a lawyer suspended because of personal incapacity to practice law [under Rule 10] shall be, insofar as applicable, the same as the procedures for reinstatement provided in Rule 11 following suspension upon disciplinary grounds."

¶ 46 Rule 11.4 requires a reinstatement applicant to demonstrate by clear and convincing evidence that "the applicant's conduct will conform to the high standards required

of a member of the Bar" if the suspension from practice is removed. Indeed, under that rule, "[a]n applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time."

¶ 47 In the context of a suspension for personal incapacity based upon a lawyer's drug addiction, Rule 10's reference to Rule 11 gives this Court a mechanism to insure that the lawyer has effectively dealt with the addiction as a condition of reinstatement. No such mechanism exists for a Rule 6 suspension on disciplinary grounds if the suspension is for two years or less. In that instance, the lawyer is automatically readmitted whether or not the lawyer remains impaired by habitual substance abuse.

¶ 48 The role of the General Counsel initially and of this Court ultimately is to discern between instances of recreational illegal drug use and performance-impairing habitual drug use. Recreational drug use brings disrepute to the profession and may signal a lack of respect for the law and the legal system. It is properly the subject of a Rule 6 proceeding. Chemical dependence which impairs or tends to impair a lawyer's representation of clients, however, falls squarely within the purview of Rule 10.

¶ 49 This Court's exclusive, nondelegable, and original jurisdiction over bar disciplinary proceedings requires that "every aspect of the Bar's adjudicative process must be supervised by [this Court's] *de novo* consideration." *State ex rel. Okla. Bar Ass'n v. Evans,* 1994 OK 45, ¶ 12 n. 13, 880 P.2d 333, 337 n. 13. This supervision includes "a full-scale exploration of all relevant facts" and it extends to "all pertinent issues." *Id.* ¶¶ 12–13, 880 P.2d at 337–38. This Court will conduct "a thorough inquiry into essential facts and [craft] the appropriate discipline [to] avoid the vice of visiting disparate treatment on the respondent-lawyer." *Id.* ¶ 13, 880 P.2d at 338. In doing so, this Court retains the authority to determine whether Rule 10 applies in a particular instance even if the General Counsel and/or the PRT have not addressed the issue. If the record is incomplete or insufficient, this Court will exercise its "plenary power to expand [the record] by an order for its supplementation."

*Id.* ¶ 13 n. 18, 880 P.2d at 338 n. 18. If, however, the record is sufficient for this Court to make a finding that the lawyer's habitual drug use impairs or tends to impair his prompt and efficient representation of clients, this Court has the authority by virtue of its power of de novo review to apply Rule 10 even if the proceeding was brought solely under Rule 6.

¶ 50 The record in this matter is sufficient to determine whether Rule 10 applies. The transcript of the disciplinary hearing reveals that the General Counsel's office was aware of Respondent's drug use but anticipated that he would deny such use when questioned before the trial panel. Instead, Respondent was very candid in admitting his habitual methamphetamine use. He related the decline in his personal, professional, and financial affairs that accompanied his addiction. He described the consequences of his decline which included bankruptcy and homelessness. Respondent also described his efforts to regain sobriety and the many relapses he has suffered. Yet, there is nothing in the record to indicate that the General Counsel or the PRT considered a Rule 10 proceeding as a means to address Respondent's professional neglect.

¶ 51 There is overwhelming evidence in the record that Respondent is personally incapacitated by his methamphetamine addiction. He is immediately suspended from the practice of law until such time that his Rule 6 suspension expires and until such time that he can demonstrate his sobriety and meet all the requirements for Rule 11 reinstatement. These include, but are not limited to, the payment of costs, reimbursement to the client security fund, and clear and convincing evidence that Respondent's conduct will conform to the high standards required of a member of the bar. Upon the expiration of Respondent's Rule 6 suspension, any further proceedings will be conducted confidentially pursuant to Rule 10.12.

RESPONDENT SUSPENDED FOR TWO YEARS PURSUANT TO RULE 6; COSTS IMPOSED; RESPONDENT SUSPENDED PURSUANT TO RULE 10.

EDMONDSON, V.C.J.; WATT, COLBERT, REIF, JJ., concur.

KAUGER, J., concurs specially.

WINCHESTER, C.J.; HARGRAVE, OPALA, TAYLOR, JJ., dissent.

KAUGER, J., concurring specially:

This matter clearly should have been brought as a Rule 10 proceeding and suspension is warranted under Rule 10. Discipline must also be imposed, but could be deferred until such time the respondent seeks reinstatement after his incapacity under Rule 10 is no longer an issue.

TAYLOR, J., dissenting with whom WINCHESTER, C.J., HARGRAVE, and OPALA, JJ. join.

It is a prosecution decision as to what charges to bring and whether the charges are brought under Rule 6 or Rule 10. That is not a decision to be made by the Court.

If the prosecutor brings charges under Rule 10, the Respondent would have a right to be informed of the specifics of the charges and the right to a full hearing and review process with the burden of proof upon the prosecution. That fundamental due process did not occur in this case as to any Rule 10 charges or discipline.

The original charges in this case were brought under Rule 6. A hearing was held. The Oklahoma Bar Association and the Professional Responsibility Tribunal recommended the Respondent be suspended for two years and a day. In his brief filed with this Court the Respondent *agreed* with that recommended discipline. I agree with the OBA, the PRT, and the Respondent. He should be suspended for two years and a day. The public and the integrity of the judicial system will be protected by this discipline and the strict Rule 11 burden of reinstatement will be upon the Respondent in later years.

This Court is not a social service agency or a drug/alcohol rehabilitation clearinghouse. It is not our duty to direct or manage the rehabilitation of alcohol and drug addicted

members of the Oklahoma Bar Association. It is our duty to adjudicate, discipline if necessary, and to protect the public and the integrity of the judicial system.